**Napoleon MOMON, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Supreme Court of Tennessee,
at Knoxville.

Nov. 15, 1999.

Opinion Granting Rehearing
March 30, 2000.

Stephen M. Goldstein, Chattanooga, Tennessee, for Appellant.

Paul G. Summers, Attorney General & Reporter, Michael E. Moore, Solicitor General, Daryl J. Brand, Associate Solicitor General, William H. Cox, III, District Attorney General 11th Judicial District, Rodney C. Strong. Assistant District Attorney, Chattanooga, Tennessee, for Appellee.

## OPINION

FRANK F. DROWOTA, III, Justice.

The appellant, Napoleon Momon, requested permission to appeal from a decision of the Court of Criminal Appeals holding that he was not denied effective assistance of counsel when his trial counsel failed to allow him to testify at his own trial. After careful consideration, we find it unnecessary to reach the issue of whether the facts of this case give rise to a claim of ineffective assistance of counsel. Instead we hold that a criminal defendant's right to testify is a fundamental constitutional right guaranteed both by Article I, section 9 of the Tennessee Constitution and by the Fifth and Fourteenth Amendments to the United States Constitution. As such, the right must be personally waived by the criminal defendant. In all cases tried or retried hereafter, trial courts should adhere to the procedural guidelines set forth herein to ensure that the defendant personally waives his or her right to testify. The appellant in this case was denied his fundamental right to testify when trial counsel unilaterally waived the right. Although the harmless error doc-

trine may be applied to a violation of the fundamental right to testify, the record on appeal before this Court has not been sufficiently developed to permit a determination of whether or not the error in this case is harmless beyond a reasonable doubt. Accordingly, we remand this case to the trial court for a hearing at which the State will bear the burden of demonstrating that the error was harmless beyond a reasonable doubt. If, however, the State fails to meet its burden, the trial court must vacate the appellant's conviction.

## BACKGROUND

The appellant, Napoleon Momon, was indicted for first degree murder in the shooting death of his wife. During his first trial on June 5, 1991, the appellant testified in his own behalf to the effect that the shooting was accidental and occurred during the course of a close struggle between him and his wife during an argument. The State presented evidence showing that the shooting was in fact not accidental since the absence of gunshot particles and residue around the wound indicated that the bullet had been fired from a distance of two or more feet. No one else was present at the time of the shooting other than the appellant and his wife. Based on this evidence, the jury returned a verdict of not guilty on the charge of first degree murder, but it was unable to reach a verdict on the lesser included offense of second degree murder.

The appellant was retried on the second degree murder charge on October 3, 1991. The State apparently presented the same witnesses as it had in the first trial,[1] but during the second trial, the defense rested without putting on any proof. Although the appellant had testified in his own behalf in the first trial, defense counsel decided that the appellant did not make a good witness, and counsel elected on his

---

1. The appellant contends that the State presented the same witnesses at the second trial as were presented at the first trial; however, the record of the first trial is not a part of the record on appeal in this case.

own not to have the appellant testify. The jury found the appellant guilty of second degree murder, and the trial court sentenced him, as a Range I offender, to serve twenty-five years in the Department of Correction. His conviction was affirmed by the Court of Criminal Appeals on direct appeal, and no appeal was taken to this court.

On August 17, 1995, the appellant filed a pro se petition for post-conviction relief alleging that he was denied effective assistance of counsel during his second trial. Both the appellant and his trial counsel testified at the post-conviction evidentiary hearing. The appellant testified that at the second trial, he and his counsel did not discuss either his right to testify or whether he should testify. Also, both the appellant and his counsel testified that counsel alone made the decision not to call the appellant as a witness, and counsel at no time consulted with the appellant in the decision. Counsel testified that he merely informed the appellant's son of the decision as they were entering the courtroom, and that his statements were intended "just more or less [for] passing on information" rather than for rendering any advice. The appellant is a paraplegic confined to a wheelchair, blind in one eye, and deaf. Because of these disabilities, his son acted as an interpreter for him throughout the proceedings and also acted as an intermediary between the appellant and his lawyer. Counsel's decision not to have the appellant testify was based on discussions that he had with two jurors after the first trial, who told him that they did not believe the appellant's testimony.

In its findings of fact, the trial court found that appellant's counsel made a unilateral decision not to call the appellant to the stand. However, the trial court determined that counsel's decision was one of trial strategy and therefore did not constitute ineffective assistance of counsel. On that basis, the trial court dismissed the petition.

On appeal, a majority of the Court of Criminal Appeals affirmed the decision of the trial court denying the appellant post-conviction relief. Although the intermediate court determined that the performance of the appellant's counsel was deficient and below an objective standard of reasonableness, the court concluded that the appellant failed to meet his burden of proving that counsel's performance was so serious as to call into question the outcome of the trial. The appellant now requests this Court to reverse the decision of the intermediate court finding that the appellant was not prejudiced by the deficient performance of his counsel, even though his counsel was ineffective and denied him a fundamental constitutional right.

## STANDARD OF REVIEW

To sustain his post-conviction petition, the appellant must prove his allegations by clear and convincing evidence. Tenn.Code Ann. § 40–30–210(f) (1997). Upon review, this Court will not reweigh or reevaluate the evidence. We give deference to questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence as they are resolved by the trial court. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). Furthermore, the findings of fact of the trial judge on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence in the record preponderates against those findings. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn.1996); *Cooper v. State*, 849 S.W.2d 744, 746 (Tenn.1993); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn.1990).

## ANALYSIS

The appellant contends that the Court of Criminal Appeals erred in affirming the trial court's denial of post-conviction relief. He argues specifically that he was denied the effective assistance of counsel when his counsel interfered with his constitutional

right to testify. In our analysis of this case, however, we need not reach the Sixth Amendment issue of whether the appellant's counsel was ineffective in failing to advise and consult his client concerning his client's right to testify at the second trial. We conclude that the appellant has been plainly denied his right to testify in his own behalf which is guaranteed by Article I, section 9 of the Tennessee Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

## RIGHT TO TESTIFY

■ It is now a well established principle in both state and federal law that a criminal defendant has a constitutional right to testify at trial. *See State v. Burkhart,* 541 S.W.2d 365, 371 (Tenn.1976); *Campbell v. State,* 4 Tenn.Crim.App. 100, 469 S.W.2d 506, 509 (1971); *see also Rock v. Arkansas,* 483 U.S. 44, 49–52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). At common law, criminal defendants did not enjoy the right to testify in part because it was believed that a defendant's interest in the trial made such testimony unreliable.[2] Although defendants were not allowed to be sworn as witnesses, the common law did permit a criminal defendant in a jury trial to plead his or her cause before the jury in an unsworn statement, and the defendant was often even expected to make an exculpatory statement before the court. *See* Reed Harvey, *Waiver of the Criminal Defendant's Right to Testify: Constitutional Implications,* 60 Fordham L.Rev. 175, 177–78 & n. 25 (1991).

The right of a criminal defendant to speak in his or her own behalf is so important in Tennessee that the right has been constitutionally guaranteed since 1796 beginning with this state's first Constitution. *See* Tenn. Const. art. XI, § IX (1796) (stating "[t]hat in all criminal prosecutions, the accused hath a right to be heard by himself and his counsel"). By including this provision, the framers of the 1796 Constitution meant to "insure that every accused citizen enjoyed the benefit of counsel [a]nd a correlative right to be heard in person." *Burkhart,* 541 S.W.2d at 371. Although this provision was left unchanged during the constitutional revision of 1834, *see* Tenn. Const. art. I, § IX (1835), it was altered in the 1870 Constitution to make clear that a criminal defendant has "*the* right to be heard by himself," *see* Tenn. Const. art. I, § 9 (1870) (emphasis added).

As originally interpreted, however, Article I, section 9 did not guarantee a criminal defendant the right to testify. In *Wilson v. State,* 3 Heiskell 198, 50 Tenn. 232 (1871), this Court stated that Article I, section 9 "certainly [does] not mean that [the defendant] may become a sworn witness on his own behalf." *Id.* at 203, 50

---

2. *See State v. Stephenson,* 878 S.W.2d 530, 550 (Tenn.1994). For more discussion on the general history of a defendant's right to testify, see Note, *Due Process v. Defense Counsel's Unilateral Waiver of the Defendant's Right to Testify,* 3 Hastings Const. L.Q. 517, 519–29 (1976).

Tenn. at 238. The rationale for this disqualification did not stem from the belief that the defendant would be less than truthful due to his interest in the litigation or from the belief that the defendant did not have a fundamental right to explain his version of events. On the contrary, the disqualification was grounded in the belief that since a testifying defendant would be subject to cross-examination, this procedure would violate a later provision in Article I, section 9 which "forbids that [the defendant] be compelled to testify against himself." *Id.* Despite the rationale, the *Wilson* Court believed that the trial court committed reversible error when the defendant was not allowed to make a statement before the jury. As the Court stated:

> An innocent person is sometimes entangled in a web of suspicion by a curious combination of facts, which no one else can explain but himself. . . . He alone may be able by a simple explanation of circumstances[,] which now seem inexplicable otherwise than upon assumption of guilt, or by putting this and that fact together, to remove every shadow of suspicion from himself.

*Id.* at 206, 50 Tenn. at 241. "In other words, the Constitution guarantees to every prisoner the right to explain the case made against him, in his own way." *Id.* at 207, 50 Tenn. at 242.

Changes in Tennessee criminal procedure have also brought changes in the interpretation of Article 1, section 9. At the time of *Wilson*, a criminal defendant was allowed to make unsworn statements before a jury because the defendant was presumed to be incompetent as a witness. In 1887, the General Assembly enacted Code section 9782 which stated: "In the trial of all indictments, presentments, and other criminal proceedings, the party defendant thereto may, at this own request, but not otherwise, be a competent witness to testify therein." The enactment of this statute rendered the *Wilson* approach a nullity because the defendant could now take the stand to testify in his or her own behalf.

In *State v. Burkhart,* 541 S.W.2d 365, 371 (Tenn.1976), this Court again had occasion to interpret Article I, section 9 of our constitution. In *Burkhart,* the issue was whether a criminal defendant, who was represented by counsel, still had the right to make his own argument before the jury. This Court found that although a defendant no longer has a right to present an unsworn statement before the jury, "[i]n Tennessee today a criminal defendant continues to have essentially the same rights. The only difference is that criminal trial procedure has been refined and in the process the defendant has gained the right to be a sworn witness testifying in his own behalf." *Burkhart,* 541 S.W.2d at 371. The Court interpreted Article I, section 9 to mean that "[i]n all criminal prosecutions the accused *has the right to testify as a witness in his own behalf* and to be represented by counsel." 541 S.W.2d at 371 (emphasis added).[3] Although the General Assembly has recently repealed the successor to Code section 9782, *see* Pub. Acts 1991, ch. 273, § 32 (repealing Tenn.Code Ann. § 40–17–102), our Tennessee Rules of Evidence clearly indicate that a criminal defendant is competent to testify. *See* Tenn. R. Evid. 601.

Under federal law, the right of a criminal defendant to testify is not mentioned specifically in the text of the United States Constitution. Nevertheless, the right has been recognized as an integral component of due process as guaranteed by the Fifth and Fourteenth Amendments. The Su-

---

**3.** The Court of Criminal Appeals has also recognized that a defendant may testify as a matter of constitutional right. *See, e.g., State v. Frazier,* 683 S.W.2d 346, 353 (Tenn.Crim. App.1984) (stating that "[i]n Tennessee, a person accused of a crime is constitutionally entitled to testify in his own behalf"); *Campbell,* 469 S.W.2d at 509 (stating that "[w]hile it is true that no person accused of crime may be compelled to testify at his trial, he may do so if he so chooses").

preme Court began signaling that the right of a criminal defendant to be heard enjoyed constitutional status as early as 1876 when the court stated that "a sentence of a court pronounced against a party without hearing him, or giving him the opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal." *See Windsor v. McVeigh,* 93 U.S. 274, 277, 23 L.Ed. 914 (1876).[4]

In 1961, the United States Supreme Court struck down a Georgia statute that limited a defendant's ability to present evidence through an unsworn statement at trial. *See Ferguson v. Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). Although the Court did not reach the question of whether a defendant had a constitutional right to testify, the Court emphasized that "decades ago the considered consensus of the English-speaking world came to be that there was not rational justification for prohibiting the sworn testimony of the accused, who above all may be in a position to meet the prosecutions case." *Id.* at 582, 81 S.Ct. 756. After *Ferguson,* the Court next hinted that a constitutional foundation supported the right to testify in *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), when it stated that "[e]very criminal defendant is privileged to testify in his

own defense or refuse to do so." *See also Brooks v. Tennessee,* 406 U.S. 605, 612, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) ("Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right.").

In *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the United States Supreme Court expressly recognized the constitutional basis of the right to testify, and declared that the right "is one of the rights that 'are essential to due process of law in a fair adversary process.'" *Id.* at 51, 107 S.Ct. 2704 (quoting *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). The Court found that this right is derived from several constitutional provisions, including the due process clause of the Fourteenth Amendment,[6] the compulsory process clause of the Sixth Amendment,[7] the Sixth Amendment right to self-representation,[8] and as a corollary to the Fifth Amendment privilege against self-incrimination.[9] Although the *Rock* Court did not specifically hold that the right to testify is a fundamental constitutional right, it acknowledged that "[o]n numerous occasions the Court has proceeded on the premise that the right to testify on one's own behalf in defense to a criminal charge is a fundamental right." *See* 483 U.S. at 51 n.

4. Although the *Windsor* Court did not classify the right to be heard as a right guaranteed by due process, twenty years later, the Court in *Hovey v. Elliott,* 167 U.S. 409, 415–17, 17 S.Ct. 841, 42 L.Ed. 215 (1897), asked rhetorically, "[a]t common law no man was condemned without being afforded an opportunity to be heard.... Can it be doubted that due process of law signifies a right to be heard in one's defense?"

6. *Rock,* 483 U.S. at 51, 107 S.Ct. 2704."The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony...." *Id.*

7. *Id.* at 52, 107 S.Ct. 2704. "Logically included in the accused's right to call witnesses whose testimony is 'material and favorable to

his defense,' is a right to testify himself, should he decide it is in his favor to do so." *Id.* (citations omitted).

8. *Id.* "Even more fundamental to a personal defense than the right of self-representation ... is an accused's right to present his own version of the events in his own words. A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." *Id.*

9. *Id.* "Every criminal defendant is privileged to testify in his own defense, or refuse to do so.... '[The Fifth Amendment's privilege against self-incrimination] is fulfilled only when an accused is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will —. —. —. —." *Id.* at 53, 107 S.Ct. at 2710 (citations omitted) (alteration in original).

10, 107 S.Ct. 2704. Based upon this language, coupled with prior Supreme Court precedent, most federal courts have concluded that the right to testify is indeed a

fundamental constitutional right.[10] In addition, virtually all of our sister states addressing the issue have also either held or stated that the right to testify is a fundamental right.[11]

**10.** *See, e.g., United States v. Boyd,* 86 F.3d 719, 723 (7th Cir.1996) (characterizing the right as a "fundamental choice"); *United States v. Ortiz,* 82 F.3d 1066, 1070 (D.C.Cir. 1996) ("We, like our sister circuits and the state courts, have no doubt that a criminal defendant has a fundamental constitutional right to testify that is personal to the defendant and cannot be waived by counsel or the court."); *United States v. Pennycooke,* 65 F.3d 9, 10 (3d Cir.1995) ("This right is personal and thus only the defendant may waive it."); *Jordan v. Hargett,* 34 F.3d 310, 312 (5th Cir. 1994) ("A criminal defendant has a fundamental constitutional right to testify on his own behalf."); *Foster v. Delo,* 11 F.3d 1451, 1457 (8th Cir.1994) (en banc) ("A criminal defendant's right to put on a defense, including the right to testify in one's own behalf, is a fundamental constitutional guarantee that can only be waived by the defendant himself."); *United States v. Joelson,* 7 F.3d 174, 177 (9th Cir.1993) ("An accused's right to testify is a constitutional right of fundamental dimension."); *United States v. Teague,* 953 F.2d 1525, 1532 (11th Cir.1992) ("We now reaffirm that a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel."); *United States v. Scott,* 909 F.2d 488, 490 (11th Cir.1990) ("It is clear then that a defendant's right to testify is now a recognized fundamental right."); *United States v. Narducci,* 18 F.Supp.2d 481, 495 (E.D.Pa.1997) ("While the defendant may, and should, receive advice from his attorney, this fundamental right cannot be contravened by an attorney even if the defendant's decision causes strategic damage."); *Campos v. United States,* 930 F.Supp. 787, 790 (E.D.N.Y.1996) ("The Court concurs with the analysis in the above cited precedent and concludes that the right to testify is a fundamental constitutional right, personal to the defendant that cannot be waived by counsel."); *Porter v. Singletary,* 883 F.Supp. 660, 666 (M.D.Fla.1995) (acknowledging the Eleventh Circuits's recognition of the right to testify as fundamental); *DeLuca v. Lord,* 858 F.Supp. 1330, 1354 (S.D.N.Y.1994) ("This Court finds that *Rock,* especially when read in light of the Supreme Court's earlier precedent, supports the contention that the right to testify is indeed fundamental in character."); *Smith v. Campbell,* 781 F.Supp. 521, 530 (M.D.Tenn.1991) ("The right of a defendant to take the stand is fundamental and may only

be waived by the defendant himself."), *aff'd by mem.,* 961 F.2d 1578 (6th Cir.1992).

**11.** *See, e.g., LaVigne v. State,* 812 P.2d 217, 219 (Alaska 1991) ("The constitutional right to testify is both personal to the criminal defendant and fundamental to the dignity and fairness of the judicial process."); *State v. Gulbrandson,* 184 Ariz. 46, 906 P.2d 579, 597 (1995) ("The United States Supreme Court has held that a defendant has a fundamental right, guaranteed under the Constitution, to testify."); *People v. Robles,* 2 Cal.3d 205, 85 Cal.Rptr. 166, 466 P.2d 710, 716 (1970) ("We are satisfied that the right to testify in one's own behalf is of such fundamental importance that a defendant who timely demands to take the stand contrary to the advice given by his counsel has the right to give an exposition of his defense before a jury."); *People v. Curtis,* 681 P.2d 504, 512 (Colo.1984) ("Moreover, we are persuaded for several independent reasons that the right to testify is so fundamental that these [procedural] safeguards [established by *Johnson v. Zerbst* ] are necessary."); *Boyd v. United States,* 586 A.2d 670, 674 (D.C.1991) ("Accordingly, we hold that the defendant's right to testify in a criminal trial is a fundamental and personal right which can only be waived by the defendant."); *State v. Raydo,* 713 So.2d 996, 998 (Fla.1998) ("A defendant's right to testify is a fundamental right under the state and federal constitutions."); *Boone v. State,* 224 Ga.App. 563, 481 S.E.2d 569, 572 (1997) ("A criminal defendant has a fundamental right to testify."); *Tachibana v. State,* 79 Hawai'i 226, 900 P.2d 1293, 1299 (1995); *State v. Hoffman,* 116 Idaho 689, 778 P.2d 811, 812 (App.1989) ("We begin our analysis by noting that every criminal defendant has a fundamental right to testify on his or her own behalf."); *People v. Madej,* 177 Ill.2d 116, 226 Ill.Dec. 453, 685 N.E.2d 908, 923 (1997) ("A defendant's right to testify at trial is a fundamental constitutional right, as is his or her right to choose not to testify."); *Passamichali v. State,* 81 Md.App. 731, 569 A.2d 733, 738 (1990) ("The right of a criminal defendant to take the witness stand and testify in his own defense is fundamental, and its existence cannot be doubted."); *Commonwealth v. Freeman,* 29 Mass.App.Ct. 635, 564 N.E.2d 11, 14 (1990) ("A criminal defendant has a fundamental right to testify on his own behalf."); *State v. Young,* 882 S.W.2d 291, 293 (Mo.Ct.App. 1994) ("Defendant's right to testify in his own

■ While no prior Tennessee case has expressly held that the right of a criminal defendant to testify is a fundamental right, it is beyond serious dispute that the right has achieved fundamental status both under the state and federal constitutions. The right of criminal defendants to be heard in their own defense is guaranteed in Tennessee by the state and federal Constitutions, by statute,[12] by over a century of prior case law, and by current practice. We have no reservation, therefore, in holding that the right of a criminal defendant to testify in his or her own behalf is a fundamental constitutional right.

■ Since the right to testify at one's own trial is a fundamental right, it follows that the right may only be waived personally by the defendant. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (stating that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal"); *Vermilye v. State*, 754 S.W.2d 82, 88 (Tenn.Crim. App.1987) ("The decision as to whether an accused should testify at trial rests with the accused, not defense counsel."); *cf. State v. Blackmon*, 984 S.W.2d 589, 591 (Tenn.1998) ("Due to our long-standing presumption against waiver of fundamental constitutional rights, these rights must be personally waived by a defendant.").[13] Generally, a right that is fundamental and

behalf is a fundamental constitutional right, waivable only by himself."); *Ingle v. State*, 92 Nev. 104, 546 P.2d 598, 599 (1976) ("We are satisfied that the right to testify in one's own behalf is of such fundamental importance that a defendant who timely demands to take the stand contrary to the advice given by his counsel has the right to give an exposition of his defense before a jury."); *State v. Savage*, 120 N.J. 594, 577 A.2d 455, 472 (1990) ("In our view, the right to testify is essential to our state-based concept of due process of law, which guarantees a 'fair and impartial trial in which there is a legitimate and decorous recognition of the substantive rights of the defendant.' ") (citation omitted); *State v. Bey*, 85 Ohio St.3d 487, 709 N.E.2d 484, 497 (1999) ("Generally, the defendant's right to testify is regarded both as a fundamental and a personal right that is waivable only by an accused."); *Perez v. State*, 960 S.W.2d 84, 88 (Tex.Ct.App.1997) ("[T]he right to testify is a fundamental constitutional right designed to guarantee a fair trial...."); *State v. Brooks*, 833 P.2d 362, 364 (Utah Ct.App.1992) ("The right of criminal defendants to testify and present their version of events in their own words is fundamental. This fundamental right is guaranteed by both the United States Constitution and the Utah Constitution.") (citation omitted); *State v. Mumley*, 153 Vt. 304, 571 A.2d 44, 45 (1989) ("Criminal defendants have a fundamental right to testify in their own defense, under both the federal and state constitutions."); *State v. Thomas*, 128 Wash.2d 553, 910 P.2d 475, 478 (1996) ("The right to testify in one's own behalf has been characterized as a personal right of 'fundamental' dimensions."); *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77, 81 (1988) ("[T]he decision to testify in one's own behalf, like the right to determine what plea to enter, the right to a jury trial, the right to counsel, and the right to be present at trial, is so fundamental that procedural safeguards must be employed on the record to insure that the defendant's waiver of the right to testify was made voluntarily, knowingly, and intelligently."); *State v. Wilson*, 179 Wis.2d 660, 508 N.W.2d 44, 48 (1993) ("Thus, in direct contrast with *Albright[State v. Albright*, 96 Wis.2d 122, 291 N.W.2d 487 (1980)], the United States Supreme Court has clearly indicated that the constitutional right to testify should be treated as fundamental in nature."); *Herdt v. State*, 891 P.2d 793, 797 (Wyo.1995) ("Criminal defendants have a right to testify on their own behalf.... We have also acknowledged that a defendant's right to testify on his own behalf is a fundamental right.") (citations omitted).

12. Although the General Assembly repealed Tennessee Code Annotated section 40–17–102, the legislature has continued to recognize that a defendant has a right to be heard in his or her own defense. *See* Tenn.Code Ann. § 40–14–101 (1998) ("In all criminal prosecutions, the accused is entitled to a speedy trial, and to be heard in person and by counsel.").

13. Although we do not address the question of ineffective assistance of counsel, it should be emphasized that trial tactics and strategy do not afford to defense counsel the authority to unilaterally waive a criminal defendant's right to testify. While it is true that a defendant's decision whether to testify is fraught with tactical and strategic implications, the decision as to whether to exercise the right to

personal to the defendant may only be waived if there is evidence in the record demonstrating "an intentional relinquishment or abandonment of a known right or privilege." *see Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The waiver of a fundamental right will not be presumed from a silent record, *see State v. Muse,* 967 S.W.2d 764, 767 (Tenn.1998); *House v. State,* 911 S.W.2d 705, 715 n. 20 (Tenn.1995), and the courts should indulge every reasonable presumption against the waiver of a fundamental right. *State ex rel. Barnes v. Henderson,* 423 S.W.2d 497, 502, 220 Tenn. 719, 730 (Tenn.1968). To ensure that defense attorneys in future criminal cases do not unilaterally deprive criminal defendants of the fundamental right to testify, in every trial where the defendant does not testify, the trial court should allow, and indeed require, defense counsel to employ the following procedure.

 At any time before conclusion of the proof, defense counsel shall request a hearing, out of the presence of the jury, to inquire of the defendant whether the defendant has made a knowing, voluntary, and intelligent waiver of the right to testify. This hearing shall be placed on the record and shall be in the presence of the trial judge. Defense counsel is not required to engage in any particular litany, but counsel must show at a minimum that the defendant knows and understands that:

(1) the defendant has the right not to testify, and if the defendant does not testify, then the jury (or court) may not draw any inferences from the defendant's failure to testify;

(2) the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying;

(3) the defendant has consulted with his or her counsel in making the decision

whether or not to testify; that the defendant has been advised of the advantages and disadvantages of testifying; and that the defendant has voluntarily and personally waived the right to testify.

 Defense counsel is generally in the best position to voir dire the defendant concerning a waiver of the right to testify, and the hearing outlined above will avoid any possible perceived pitfalls of mandating direct questioning by the trial court itself. Since the right to testify is the mirror image of the right to remain silent, there is an inherent risk that a trial judge participating in the questioning may cast an unflattering light on the right not to testify. *See Commonwealth v. Hennessey,* 23 Mass.App.Ct. 384, 502 N.E.2d 943, 947 (1987). Under normal circumstances, therefore, the trial judge should play no role in this procedure, unless the judge believes there is evidence that the defendant is not making a valid waiver of the right to testify. In such a case, the trial judge is obliged to question the defendant directly to the extent necessary to ensure a valid waiver.

The approach outlined above strikes the proper balance between the preservation of a fundamental right and the need to protect the relationship and confidences between defense counsel and his or her client. It seeks to minimize judicial interference with the attorney-client relationship while ensuring that defendants know and understand that they have a fundamental right to testify in their own behalf. This approach also facilitates appellate review by having a clear waiver of the right to testify present on the record of the trial.

 We emphasize, however, that neither the right to testify discussed herein, nor the procedural protections adopted to preserve that right are new constitutional rules which must be retroactively

---

testify is one which can only be made by the criminal defendant, and counsel can not unilaterally waive this right, even when counsel

strongly believes the exercise of the right is not in the best interests of the criminal defendant.

applied. A constitutional rule is considered "new" when the rule amounts to a "clear break" with past precedents. *See State v. Enochs,* 823 S.W.2d 539, 540 (Tenn.1991). A rule that merely restates or reemphasizes pre-existing state law is not one that is "new." *See State v. Prince,* 781 S.W.2d 846, 850 (Tenn.1989). It follows that the right of a criminal defendant to testify in his or her own behalf is not new. As previously stated, this right has long been recognized by statute, case law, and constitutional provision. This decision simply clarifies and reiterates that the right is fundamental and must be personally waived by the defendant. The procedural protections set forth in this decision are designed to ensure that any waiver of the right is personally made by the defendant. The procedures are prophylactic measures which are not themselves constitutionally required. As such, the procedures adopted herein do not establish a new constitutional rule which must be retroactively applied. Trial courts should adhere to these procedural guidelines in all cases tried or retried after the date of this decision. However, the mere failure to follow these guidelines will not in and of itself support a claim for deprivation of the constitutional right to testify if there is evidence in the record to establish that the right was otherwise personally waived by the defendant. *Compare Johnson v. State,* 834 S.W.2d 922, 924 (Tenn.1992) (discussing advice procedures relevant to entry of guilty pleas and stating that "it is the result [a knowing and voluntary plea] not the process that is essential to a valid plea").

 In this case, it is apparent from the record that the appellant did not personally waive the right to testify. In fact, the record is clear that appellant's counsel unilaterally decided not to call the appellant as a witness to the stand at the second trial. Counsel neither advised the appellant of his right to testify nor discussed with the appellant the advantages and disadvantages of testifying or refraining

from testifying. Rather, counsel merely informed the appellant of his decision as they were entering the courtroom. Under these circumstances and given his disabilities, the appellant had little time or opportunity to question the decision of his counsel. Because the right to testify is fundamental and personal to the accused, counsel did not have the authority to unilaterally decide the issue on the appellant's behalf. Under these circumstances, it is clear that the appellant was denied his fundamental right to testify which is guaranteed by both the state and federal constitutions. Having determined that the appellant's right to testify was violated in this case, we must next determine whether the error is subject to the harmless error doctrine.

### *HARMLESS ERROR DOCTRINE*

Prior to 1967, neither Tennessee nor federal courts applied the harmless error doctrine to constitutional violations. *See State v. Williams,* 977 S.W.2d 101, 104 (Tenn.1998); *Sullivan v. Louisiana,* 508 U.S. 275, 278, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); *Arizona v. Fulminante,* 499 U.S. 279, 306–07, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991) ( Rehnquist, C.J.). Consequently, when a constitutional error occurred in a criminal trial, reversal was the automatic remedy. *Id.*

In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court rejected the proposition that all federal constitutional errors that occur in the course of a criminal trial require reversal. The *Chapman* Court held that the Fifth Amendment violation of prosecutorial comment upon the defendant's failure to testify would not require reversal of a conviction if the State could show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24, 87 S.Ct. at 828. The *Chapman* standard recognizes that "certain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on

the factfinding process at trial." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

Since *Chapman,* the Court has "repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Id.* Generally, in modern jurisprudence application of the harmless error doctrine is the rule rather than the exception. *See Williams,* 977 S.W.2d at 105; *see also Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 3106–07, 92 L.Ed.2d 460 (1986). Indeed, both the United States Supreme Court [14] and the courts of this State [15] have applied the

14. *See e.g. Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding that harmless error analysis applies to erroneous jury instructions which direct the jury to presume an ultimate element of the offense based upon proof of certain predicate facts); *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (holding that harmless error analysis applies to erroneous admission of involuntary confessions); *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (holding that harmless error analysis applies to unconstitutionally overbroad jury instructions at the sentencing stage of a capital case); *Carella v. California,* 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (holding that harmless error analysis applies to a jury instruction containing an erroneous conclusive presumption); *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (applying harmless error analysis to the admission of evidence at the sentencing stage of a capital case in violation of the Sixth Amendment right to counsel); *Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (holding that harmless error analysis applies to a jury instruction misstating an element of the offense); *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (holding that harmless error analysis applies to a jury instruction containing an erroneous rebuttable presumption); *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (holding that harmless error analysis applies to the erroneous exclusion of the defendant's testimony regarding the circumstances of his confession); *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding that harmless error analysis applies to trial court's error in restricting the defendant's right to cross-examine a witness for bias in violation of the Sixth Amendment); *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (stating that some violations of a defendant's right to be present at trial may be subject to harmless error analysis); *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (holding that improper comment on a defendant's silence at trial in violation of the Fifth Amendment right against self-incrimination is subject to harmless error analysis); *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) (holding that due process violation resulting from statute which improperly forbade trial court's giving of a jury instruction on a lesser included offense in a capital case was subject to harmless error analysis); *Kentucky v. Whorton,* 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979) (holding that failure to instruct the jury on the presumption of innocence is an error subject to harmless error analysis); *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (holding that erroneous admission of identification evidence in violation of the Sixth Amendment right to counsel is subject to harmless error analysis); *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (holding that admission of the out-of-court statement of a nontestifying codefendant in violation of the Sixth Amendment right to counsel is subject to harmless error analysis); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) ((holding that harmless error analysis applies to a confession obtained in violation of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (holding that harmless error analysis applies to erroneous admission of evidence obtained in violation of the Fourth Amendment); *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (holding that denial of counsel at a preliminary hearing in violation of the Sixth Amendment right to counsel is subject to harmless error analysis).

15. *See e.g. State v. Valentine,* 911 S.W.2d 328 (Tenn.1995) (holding that harmless error analysis applies to the erroneous admission of evidence seized pursuant to an invalid warrant and in violation of the Fourth Amendment); *State v. Howell,* 868 S.W.2d 238, 252 (Tenn.1993) (holding that harmless error analysis applies both to the denial of a defendant's right to effective cross-examination and to a jury's consideration of an unconstitution-

harmless error doctrine to a wide variety of constitutional errors. As the United States Supreme Court has recognized, "[t]he common thread connecting these cases is that each involved 'trial error'— error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, 499 U.S. at 307, 111 S.Ct. at 1264.

Application of the harmless error doctrine does not signify a disrespect of the constitutional rights which have been violated. *Rose*, 478 U.S. at 577, 106 S.Ct. at 3105. To the contrary,

> [t]he harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.

*Van Arsdall*, 475 U.S. at 681, 106 S.Ct. at 1436 (citations and internal quotation marks omitted); *see also Howell*, 868 S.W.2d at 253. The harmless error doctrine is an embodiment of the fundamental premise that "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Howell*, 868 S.W.2d at 253 quoting *Van Arsdall*, 475 U.S. at 681, 106 S.Ct. at 1436.

Despite the strong interests that support application of the harmless error doctrine, the United States Supreme Court and this Court have consistently held that some errors defy harmless error analysis and require reversal. *See e.g. Fulminante*, 499 U.S. at 309, 111 S.Ct. at 1265; *Rose*, 478 U.S. at 577, 106 S.Ct. at 3105; *Chapman*, 386 U.S. at 23 n. 8, 87 S.Ct. at 828 n. 8; *State v. Harris*, 989 S.W.2d 307, 315 (Tenn.1999). The cases in which the United States Supreme Court and this Court have refused to apply the harmless error doctrine involve errors that are "structural defects in the constitution of the trial mechanism." *Fulminante*, 499 U.S. at 310, 111 S.Ct. at 1265. These errors have an impact upon "[t]he entire conduct of the trial from beginning to end." *Id.* Stated another way, "these errors deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair.' " *Neder*, 527 U.S. at ——, 119 S.Ct. at 1833 (quoting *Rose*, 478 U.S. at 577, 106 S.Ct. at 3101). Only a very limited class of errors have been found to be "structural," and subject to automatic reversal. *See Gideon*

al aggravating circumstance at the sentencing phase of a capital trial); *State v. Deuter*, 839 S.W.2d 391, 396 (Tenn.1992) (holding that harmless error analysis applies to a denial of the defendant's right of confrontation); *State v. Bates*, 804 S.W.2d 868, 876 (Tenn.1991) (holding that erroneous admission of a defendant's confession obtained in violation of his right to counsel is subject to harmless error analysis); *State v. West*, 767 S.W.2d 387, 398–99 (Tenn.1989) (holding that Eighth Amendment error in minimizing role of the jury in a capital case is subject to harmless error analysis); *State v. Coker*, 746 S.W.2d 167, 170 (Tenn.1987) (applying harmless error analysis to erroneous jury instructions that included an impermissible rebuttable presumption in violation of due process); *State v. Mitchell*, 593 S.W.2d 280, 285 (Tenn.1980) (holding that harmless error analysis applies to identification proof obtained in violation of the defendant's right to counsel); *State v. Transou*, 928 S.W.2d 949, 960 (Tenn.Crim.App.1996) (applying harmless error analysis to the prosecutor's comment on the defendant's failure to testify which violated the defendant's Fifth Amendment privilege against self-incrimination); *State v. Thompson*, 832 S.W.2d 577, 581 (Tenn.Crim.App.1991) (applying harmless error analysis to the infringement upon the defendant's due process right to the presumption of innocence which occurred when the defendant appeared shackled in the presence of the jury).

*v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (adjudication by a biased judge); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable doubt instruction); *State v. Muse*, 967 S.W.2d 764, 768 (Tenn.1998) (denial of right to be present at jury selection); *State v. Benson*, 973 S.W.2d 202, 207 (Tenn.1998) (denial of right to impartial judge); *State v. Bobo*, 814 S.W.2d 353, 357 (Tenn.1991) (denial of right to trial by jury).[16]

Unlike such defects as a complete deprivation of counsel or trial before a biased judge, denial of the defendant's right to testify does not in all cases render a criminal trial fundamentally unfair or call into question the reliability of the trial as a vehicle for determining guilt or innocence. Such an error involves the exclusion of testimony which is evidence that can be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, 499 U.S. at 307, 111 S.Ct. at 1264. In some cases, "the defendant's testimony would have no impact, or even a negative impact, on the result of trial." *United States v. Tavares*, 100 F.3d 995, 999 (D.C.Cir.1996), *cert. denied* 520 U.S. 1160, 117 S.Ct. 1344, 137 L.Ed.2d 502 (1997); *see also State v. Robinson*, 138 Wash.2d 753, 982 P.2d 590, 599 (1999). Likewise, in some cases, denial of a defendant's right to testify may be devastating to the defense. However, under such circumstances, a reviewing court will simply conclude that the error was not harmless beyond a reasonable doubt. The fact that reversal may be required in some cases is no reason to eschew the harmless error doctrine entirely when the error involved is clearly of a trial, rather than a structural nature. *Cf. Fulminante*, 499 U.S. at 312, 111 S.Ct. at 1266.

 As such, denial of the right to testify has been appropriately characterized as a trial error which is subject to the harmless error doctrine. Indeed, the vast majority of jurisdictions which have considered this issue have held either that the harmless error doctrine applies when a defendant establishes a denial of the right to testify under the Fifth Amendment or that the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) must be established if the defendant is to prove ineffective assistance of counsel as a result of counsel's unilateral waiver of the right to testify.[17] *See e.g. Tavares*, 100 F.3d at 999

---

**16.** Contrary to the dissent's assertion, the analysis in this opinion clearly explains why denial of the right to self-representation is not subject to the harmless error doctrine while denial of the right to testify is subject to the harmless error doctrine. Despite unsupported statements in the dissent, the right of self-representation is not a "lesser right." Instead, it is a right which is co-equal with the right to testify. However, denial of the right to self representation impacts "[t]he entire conduct of the trial from beginning to end," and therefore is not subject to harmless error analysis. *Fulminante*, 499 U.S. at 310, 111 S.Ct. at 1265. We reject the assertion of the dissent that courts should somehow rank constitutional rights as more or less fundamental

in determining whether harmless error analysis should apply. Whether a constitutional right is fundamental relates only to whether the defendant must personally waive the right. The fact that a right must be personally waived by a defendant is not relevant to the determination of whether or not the harmless error doctrine applies. Instead, the impact of the error upon the trial mechanism must be considered in determining whether the harmless error doctrine applies.

**17.** As the dissenting opinion points out, the analysis is slightly different under the Sixth Amendment than the Fifth Amendment. The primary difference is that under the Sixth Amendment the burden is on the petitioner to

(citing other federal cases); *Commissioner of Correction v. Rodriquez*, 222 Conn. 469, 610 A.2d 631, 636 n. 9 (1992); *People v. Johnson*, 62 Cal.App.4th 608, 72 Cal. Rptr.2d 805, 820 (4 Dist.1998); *State v. Silva*, 78 Hawai'i 115, 890 P.2d 702, 712 (1995) (overruled on other grounds in *Tachibana v. State*, 79 Hawai'i 226, 900 P.2d 1293, 1302–03 (1995); *People v. Solomon*, 220 Mich.App. 527, 560 N.W.2d 651, 654–56 (1996); *State v. Paulsen*, 726 A.2d 902, 907 (N.H.1999); *State v. Arguelles*, 921 P.2d 439, 441 (Utah 1996); *Robinson*, 982 P.2d at 598; *State v. Flynn*, 190 Wis.2d 31, 527 N.W.2d 343 (App.1994).[18] Application of the harmless error doctrine to the denial of a criminal defendant's right to testify strikes the appropriate balance between the judicial system's interest in obtaining reliable results and the system's competing interest in having litigation end at some point.[19] *Van Arsdall*, 475 U.S. at 681, 106 S.Ct. at 1436; *Chapman*, 386 U.S. at 22, 87 S.Ct. at 827.

 Once a constitutional error has been established, as in this case, the burden is upon the State to prove that the constitutional right violation is harmless beyond a reasonable doubt. *Harris*, 989 S.W.2d at 314. "Harmless error review looks ... to the basis on which the jury

actually rested its verdict." *Sullivan*, 508 U.S. at 279, 113 S.Ct. at 2081. However, courts often identify certain factors to aid in discerning the actual basis on which a jury rested its verdict. For example, in *Howell*, this Court stated that a reviewing court determining whether the denial of effective cross-examination is harmless beyond a reasonable doubt should consider the following factors: (1) the importance of the witness's testimony in the prosecution's case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *See Howell*, 868 S.W.2d at 253 (citing *Van Arsdall*, 475 U.S. at 684–85, 106 S.Ct. at 1438).

 Denial of a defendant's right to testify is analogous to denial of a defendant's right to effective cross-examination. In both instances, the defendant is being deprived of the right to present evidence to the jury. While not entirely relevant by their terms in the context of a denial of the right to testify, the factors identified in *Howell* are indicative of the concerns that arise under harmless error review when

prove prejudice from counsel's action in unilaterally depriving a defendant of the right to testify. Under the Fifth Amendment, the burden is on the State to prove that the deprivation was harmless beyond a reasonable doubt. Given the importance of the right to testify in Tennessee, we deem it more appropriate to place the burden on the State to prove the deprivation harmless. However, a rule of presumed prejudice under the Sixth Amendment has the same practical effect as holding that denial of the right to testify under the Fifth Amendment defies harmless error analysis. Accordingly, contrary to the dissent's assertion, our reliance on cases which have analyzed this issue under the Sixth Amendment and rejected a rule of presumed prejudice is clearly appropriate.

18. The dissenting opinion criticizes the precedent upon which we rely in holding that the harmless error doctrine applies to denials of the right to testify. Interestingly, however, the dissent cites *no authority* in support of the

rule it advocates. The rule of automatic reversal which the dissent would adopt was adopted by the Maine federal district court in *United States v. Butts*, 630 F.Supp. 1145, 1148 (D.Me.1986). However, this decision has not been followed by other federal courts. Indeed, only one other jurisdiction in the United States appears to apply a similar rule. *State v. Rosillo*, 281 N.W.2d 877, 879 (Minn.1979).

19. The dissenting opinion states that the harmless error doctrine "amounts to no more protection than one could expect from a paper tiger, and this fundamental right deserves the protection of automatic reversal." This statement is representative of the dissent's fundamental misunderstanding of the harmless error doctrine. The harmless error doctrine is not a protection. Indeed, the harmless error doctrine becomes relevant only after a right has been violated. The procedural guidelines set forth herein are designed to protect the fundamental right to testify.

evidence has been erroneously excluded. Therefore, courts should consider the following factors when determining whether the denial of the right to testify is harmless beyond a reasonable doubt: (1) the importance of the defendant's testimony to the defense case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the defendant on material points; (4) the overall strength of the prosecution's case. As previously stated, the goal of harmless error analysis is to identify the actual basis on which the jury rested its verdict. *Sullivan*, 508 U.S. at 279, 113 S.Ct. at 2081. Accordingly, the factors identified herein are merely instructive and not exclusive considerations.[20]

■ Complete consideration of these factors is not possible in this Court because the record on appeal does not contain Momon's testimony from his first trial nor does it contain an offer of proof indicating the substance of the testimony Momon would have offered at his second trial if he had not been denied the right to testify. In the trial court, Momon was attempting to establish a Sixth Amendment claim of ineffective assistance of counsel, and the State was attempting to meet that claim. The record is simply not sufficient for this Court to evaluate whether the denial of the appellant's constitutional right to testify was harmless beyond a reasonable doubt. Therefore, we conclude that this case must be remanded to the trial court for a hearing at which the

State will bear the burden of establishing that the denial of the appellant's constitutional right to testify was harmless beyond a reasonable doubt. *Compare State v. Phipps*, 959 S.W.2d 538 (Tenn.1997) (remanding to the trial court for a hearing at which the State would bear the burden of rebutting the presumption of vindictiveness); *McKeldin v. State*, 516 S.W.2d 82 (Tenn.1974) (remanding for a determination of whether the denial of counsel at preliminary hearing constituted harmless error). We are confident that the trial judge will carefully consider the record developed at the hearing on remand in light of the factors identified herein as relevant to the determination of whether the error was harmless beyond a reasonable doubt. If the trial court concludes that the State has met its burden of establishing that the error was harmless, the appellant's conviction should be sustained. However, if the trial court concludes that the State failed to prove that the error was harmless beyond a reasonable doubt, the trial court must vacate the appellant's conviction.[21]

### CONCLUSION

To summarize, we hold that the right to testify is fundamental and constitutionally guaranteed by Article I, section 9 of the Tennessee Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. As such, the right must be personally waived by the criminal

---

**20.** Contrary to the dissent's assertion, we are not limiting review under the harmless error doctrine to only these four factors.

**21.** The dissenting opinion's assertion that the harmfulness of the error in this case can be judged only because the court has the benefit of comparing the result of the first trial, at which the defendant testified, to the result of the second trial, at which the defendant did not testify. We reject this assertion. The task of the trial court is not to compare the *result* of the two trials. The task of the trial court is to consider the testimony that the defendant would have given and the proof which was actually offered at the second trial in light of the factors delineated herein and any other

factors that are relevant to the determination. Apparently, the dissent fails to recognize that the appellant is entitled at the hearing on remand to make an offer of what his testimony would have been at the second trial had he not been deprived of the right to testify by counsel. Such a procedure can and should be followed in every case where a defendant establishes that he or she was denied the right to testify. *Cf.* Tenn. R. Evid. 103(a)(2). Therefore, the dissent's assertion that the harmless error doctrine can be applied only when "the defendant has been fortuitously tried twice and can demonstrate different outcomes" is totally without merit.

defendant. In cases tried or retried hereafter, trial courts should employ the procedural guidelines set forth in this opinion to ensure that a criminal defendant personally waives the right to testify. By unilaterally deciding not to call the appellant as a witness, counsel in this case deprived the appellant of his fundamental right to testify. While the error is subject to the harmless error doctrine, the record before this Court is not sufficiently developed to enable this Court to determine whether or not the error was harmless beyond a reasonable doubt. Accordingly, we remand to the trial court for a hearing at which the State shall bear the burden of establishing that the denial of the appellant's constitutional right to testify was harmless beyond a reasonable doubt. If the State fails to meet this burden, the trial court shall vacate the defendant's conviction. Costs of this appeal are taxed to the State of Tennessee.

ANDERSON, C.J., concurs.

HOLDER, J., concurs.

BARKER, J. and BIRCH, J., See separate Concurring/Dissenting Opinion.

WILLIAM M. BARKER, Justice, concurring and dissenting.

I concur with the conclusion of the Court that the right to testify is fundamental, and I agree with the procedural protections that the Court now requires to ensure a valid waiver of that right. However, because I am unable to reconcile the majority's characterization of the right to testify as being fundamental and personal to the defendant with the majority's conclusion that the right is subject to harmless error analysis, I dissent.

The majority has researched and traced the right of a criminal defendant to speak in his or her own behalf at trial with thoughtfulness and careful attention. As the majority recognizes, this right has been recognized in Tennessee in one form or another since the very beginning of statehood, and as far back as 1796, the common law prohibition on a defendant's right to speak at trial has found no sanctuary in our criminal jurisprudence. The right to testify has also achieved fundamental status under federal law, and the majority quotes *Rock v. Arkansas*, 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), as stating that the right to testify "is one of the rights that are essential to due process of law in a fair adversary process." The meticulous and painstaking research of both state and federal law undertaken by the majority exposes the truth of these propositions.

To conclude its thorough analysis of the fundamental nature of the right to testify, the Court correctly states that "it is beyond serious dispute that the right [of a criminal defendant to testify] has achieved fundamental status under the state and federal constitutions." It is with some wonder, then, that the majority holds that the right to testify is not so fundamental as to defy harmless error analysis.

At one time, Tennessee courts regularly held that violations of constitutional rights could never constitute harmless error. *See Briggs v. State*, 207 Tenn. 253, 338 S.W.2d 625 (1960). Following *Briggs*, however, the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), held that most constitutional errors were subject to harmless error analysis so long as the error was found to be harmless beyond a reasonable doubt. Indeed, as this Court has declared, "in modern jurisprudence, there is a presumption that harmless error should be applied." *State v. Williams*, 977 S.W.2d 101, 105 (Tenn. 1998).

This presumption of harmless error analysis has never been conclusive, however, and some constitutional rights are so fundamental that their violation is never subject to harmless error analysis. The majority today adopts the federal harmless error analysis formulated by Chief Justice Rehnquist in *Arizona v. Fulminante*, 499

U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), to hold that the right to testify is subject to harmless error. In *Fulminante,* the Court fashioned a curious dichotomy between those errors"occurri[ing] during the presentation of the case to the jury," *id.* at 307, 111 S.Ct. 1246, and those"affecting the framework within which the trial proceeds rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. 1246. Only the rights falling into the latter category are beyond the reach of harmless error analysis. Among the rights listed by the court whose infringement constitutes a structural defect is the right to self-representation at trial. *Id.; see also McKaskle v. Wiggins,* 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) With its citation to*McKaskle v. Wiggins,* the Supreme Court reaffirmed that "the right to speak for one self entails more than the opportunity to add one's voice to the cacophony of others."*McKaskle,* 465 U.S. at 177, 104 S.Ct. 944. The *McKaskle* Court acknowledged that a denial of the right to speak for one's self implicates concerns beyond the mere presentation of evidence to a jury; the ability to exercise of the right of self-representation "affirm[s] the dignity and autonomy of the accused and [allows] the presentation of what may, at least occasionally, be the accused's best possible defense." *Id.*

I believe this same rationale is even more true with respect to a defendant's right to testify. The right to testify is, after all, an integral part of the defendant's right to conduct a defense, and like the right of self representation, the right to testify also affirms the dignity and autonomy of the accused. In fact, as the United States Supreme Court has declared, "[e]ven more fundamental to a personal defense than the right of self-representation ... *is an accused's right to present his own version of events in his own words.* A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." *Rock,* 483 U.S. at 52, 107 S.Ct. 2704 (emphasis added).

A careful review of the majority's harmless error analysis reveals the conspicuous absence of any adequate answer to most essential question in this debate: If denial of the right of self-representation is not subject to harmless error analysis, how can this Court then insist that denial of the *more fundamental* right of a defendant to testify is somehow less worthy of protection? It is bewildering that the majority would devote several pages to establishing the fundamental nature of the right to testify only to later deny its fundamental nature when asked to provide for a rule of automatic reversal.[1] Until the majority is able to provide an answer to why deprivation of the more fundamental right is not deserving of automatic reversal—and I suspect they can not—I must respectfully dissent.[2]

---

1. The majority says that I have fundamentally misperceived the nature of the harmless error doctrine as constituting a protection of constitutional rights. To be sure, I do not believe that the harmless error doctrine provides any genuine protection for the right to testify.

 In fact, application of the harmless error doctrine allows the erosion of the right to testify because it permits courts to overlook or ignore deprivations of the right under certain circumstances. Under the harmless error doctrine, the significance of the right to testify depends entirely upon the amount of prejudice suffered by the defendant. In its most basic sense, no prejudice equals no right to testify.

 A rule of automatic reversal, however, affords real protection for the right to testify because it ensures a new trial for a defendant who has been deprived the exercise of this fundamental right. Therefore, when I speak of the majority affording less protection for the right to testify by applying the doctrine of harmless error, I mean that the majority has chosen to provide less protection for the denial of the right than it would have if the majority had chosen to provide for automatic reversal.

2. I do not mean to imply that this court should somehow engage in the dubious enterprise of "ranking" constitutional rights in order of importance. I mean only that the United States Supreme Court has stated that the fundamental right of a criminal defendant to testify at trial is "[e]ven more fundamen-

In support of its view that denial of the right to testify is subject to harmless error analysis, the majority relies in part on case law from other jurisdictions. As the majority states, "The vast majority of jurisdictions which have considered this issue have held that harmless error analysis applies when a defendant establishes a denial of the right to testify under the Fifth Amendment or that the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)[,] must be established if the defendant is to prove ineffective assistance of counsel...." While I agree that such cases exist, I question the propriety of the specific cases cited by the majority to support its conclusion that a denial of the right to testify is subject to harmless error analysis under Tennessee law.

Of the nine cases cited by the majority opinion for the proposition that denial of the right to testify is subject to harmless error analysis, six of these cases analyze the issue following a Sixth Amendment ineffective assistance of counsel approach.[3] The jurisdictions adopting a Sixth Amendment approach generally believe that the diligence of trial counsel is the best protection for the right to testify. Therefore, according to this approach, it ineluctably follows that a claim of ineffective assis-

tance of counsel would be the proper remedy.

In this case, however, the Court has refused to decide the Sixth Amendment claim as originally presented by the parties. Instead, the majority has chosen to afford relief based upon the text of Article I, section 9 of the Tennessee Constitution and the Fifth Amendment to the federal constitution. Further, the majority has adopted a procedure by which the court—and not trial counsel—is required to ensure a valid waiver of the right to testify.[4] By adopting such a procedure, the Court has rejected the notion that trial counsel alone is in the best position to the protect the right to testify. As such, I believe that reliance on Sixth Amendment cases is questionable at best, and such authority should not be considered in concluding that the right to testify is subject to harmless error under the Tennessee Constitution.[5]

The three remaining cases cited by the majority for the proposition that a denial of the right to testify is subject to harmless error analysis do follow a Fifth Amendment approach.[6] These cases primarily rely upon the approach articulated in *Ortega v. O'Leary*, 843 F.2d 258 (7th

---

tal" than the right of self-representation. *See Rock*, 483 U.S. at 52, 107 S.Ct. 2704. This having been said, I can see no reason why the "[e]ven more fundamental" right should not be afforded the protection of automatic reversal.

**3.** *See United States v. Tavares*, 100 F.3d 995, 999 (D.C.Cir.1996); *Commissioner of Correction v. Rodriquez*, 222 Conn. 469, 610 A.2d 631, 636 n. 9 (1992), overruled on procedural grounds, *Simms v. Warden*, 229 Conn. 178, 640 A.2d 601 (1994); *State v. Paulsen*, 726 A.2d 902, 907 (N.H.1999); *State v. Arguelles*, 921 P.2d 439, 441 (Utah 1996); *State v. Flynn*, 190 Wis.2d 31, 527 N.W.2d 343 (App. 1994); *State v. Robinson*, 138 Wash.2d 753, 982 P.2d 590 (1999).

**4.** Although the procedure adopted by the majority does call for trial counsel to voir dire the defendant, the trial court nevertheless is the final arbiter of whether a valid waiver has been made. When there is evidence that a

valid waiver has not been made, the trial court "is obliged to question the defendant directly to the extent necessary to ensure a valid waiver."

**5.** I wish to reiterate that I am in full agreement with the majority that a Sixth Amendment right to counsel analysis is improper in right to testify cases. Nevertheless, I believe the majority's reliance on Sixth Amendment cases to support harmless error analysis under either the Tennessee Constitution or the Fifth Amendment is intellectually suspect.

**6.** *See People v. Johnson*, 62 Cal.App.4th 608, 72 Cal.Rptr.2d 805, 820 (1998); *State v. Silva*, 78 Hawai'i 115, 890 P.2d 702, 712 (App. 1995), overruled on other grounds, *Tachibana v. State*, 79 Hawai'i 226, 900 P.2d 1293 (1995); *People v. Solomon*, 220 Mich.App. 527, 560 N.W.2d 651, 654–56 (1996).

Cir.1988),[7] which essentially analyzes a denial of the right to testify from the perspective of a denial of the right to present other witness testimony. Fully in accord with *Ortega*, the majority proposes a multi-factored test to determine the harmfulness of a denial of the right to testify. As evidenced by the four enumerated factors, the majority apparently believes that the testimony of a defendant is no more important than that of any other defense witness.[8]

The majority states that in some cases, "the defendant's testimony would have no impact, or even a negative impact, on the result of trial." The Court also states that in other cases, "denial of the defendant's right to testify may be devastating to the defense. However, under such circumstances, a reviewing court '*will simply conclude that the error was not harmless beyond a reasonable doubt.*'" (emphasis added).

With all due respect to the majority, I fail to see how in most cases a reviewing court could conclude that a defendant's omitted testimony is "devastating to the defense." The appellant's own case is an excellent example of how the majority's test fails to properly account for the harmfulness of the error. For example, the appellant's testimony in the second trial would have been cumulative because his version of events was already presented to the jury through his prior statements made to police and those given in depositions. The State was able to present expert proof that the shooting was not the result of a struggle because the shot was fired more than three feet away, and the

defendant's testimony was not strictly needed since the defense strategy was simply to put the State to its burden of proving the offense beyond a reasonable doubt.[9] Using this Court's own test, most courts would probably consider denial of the defendant's right to testify in the second trial harmless beyond a reasonable doubt.

One of the criticisms of harmless error analysis generally is that appellate courts are ill-equipped to judge the actual harm resulting from a denial of a constitutional right. The appellant's case is unique, though, because it affords a reviewing court the opportunity to actually observe the harm by comparing the results of *two* trials whose only substantial and material difference is the lack of the appellant's testimony. When the appellant testified in the first trial, he received an acquittal on the charge of first degree murder, and the jury was unable to reach a verdict on the lesser charge of second degree murder. However, when the appellant did not testify at the second trial, the jury was able to reach a verdict. I do not discount the reality that no two juries are ever the same, but one could certainly argue that given the results of the first trial, the failure of the appellant to testify in the second trial certainly lead to his conviction of second degree murder.

If a reviewing court can conclude that denial of the right to testify in the second trial was harmful in this case, it will no doubt *only* be because the court has the benefit of a different result in a second trial. I suspect that in most cases, neither this Court nor any other court will likely

---

7. These two cases relying on *Ortega* are *State v. Silva* and *People v. Solomon*. The California Court of Appeals found harmless error in *People v. Johnson* without relying on *Ortega*. However, the attorney in *Johnson* denied his client the right to testify because he believed that his client was going to present perjured testimony. Because there is no fundamental right to present perjured testimony, the holding in *Johnson* does not seem to support the majority's conclusion that the right to testify generally is subject to harmless error.

8. The fundamental misconception here is that the defendant is not merely another witness for the defense. "In fact, the most important witness for the defense in many criminal cases is the defendant himself." *Rock*, 483 U.S. at 52, 107 S.Ct. 2704.

9. In fact, the defense did not offer any witnesses at the second trial.

have the benefit of comparing the outcomes of two different trials whose only substantial and material difference is the defendant's failure to testify. Without the benefit of the first trial, it would not strain logic to conclude that denial of the appellant's right to testify in the second trial was harmless beyond a reasonable doubt. As such, the application of the Court's multi-factor test may amount to protection of a fundamental right only when the defendant has been fortuitously tried twice and can demonstrate different outcomes.[10] The application of such a test amounts to no more protection than one could expect from a paper tiger, and this fundamental right deserves the protection of automatic reversal.

I profoundly disagree that a denial of the right to testify is merely a "trial error" involving only the presentation of evidence to a jury. In so holding, this Court has ignored that the evidentiary value of the defendant's testimony is not the only concern involved when examining the harm incurred by a denial of the right to testify. The right to testify is part of the larger right of a defendant to present a defense, and it is often the only opportunity that a defendant has to present his or her version of events to the jury.[11] As has been said of the right to testify:

> [The right to testify] is embraced in the right of the defendant to meet and deny the accusation against him and to present evidence in his behalf, including himself as a witness. The decision whether defendant will testify is a choice between mere passivity at trial and active participation through which the defendant can inject his own acts, voice and personality into the process. Taking the stand is the defendant's opportunity, if he wants it, to face his accusers and the jury, tell his story, submit to examination, and exercise such ability as he may have to persuade those who will make a decision that may vitally affect his life. And the witness box gives the defendant a forum to speak to a world larger than the courtroom. Considerations such as these make the right to testify fundamental to the fairness, the dignity and the vitality of the twentieth century judicial process.

*See Wright v. Estelle*, 572 F.2d 1071, 1081 (5th Cir.1978) (Godbold, J., dissenting) (citation omitted). As I have tried to show, the actual and inherent worth of a defendant's testimony consists of much more than its evidentiary value alone.

Although I am concerned with the majority's application of harmless error analysis to a denial of the right to testify, I am also concerned that this Court needs to develop a consistent approach to decide which fundamental rights defy harmless error analysis. Today, the majority holds that denial of the right to testify is subject to harmless error analysis because it constitutes a "trial error," and therefore, the Court seems to fully adopt the federal harmless error standard under *Arizona v. Fulminante*. Previously, however, this Court has recognized rights that defy harmless error analysis based upon express recognition in our constitution and statutes without regard to the *Fulminante*

---

**10.** The majority says that I have overlooked the fact that a defendant in a post-conviction hearing will be able to offer what his testimony would have been. Such an approach would have offered this appellant no relief, however, because his version of events was presented to the jury in the form of statements made to police and statements made in a civil deposition. The jury at the second trial did not get the opportunity to judge firsthand the credibility of the defendant or to observe how his testimony would have withstood cross-examination. Although we can never know for sure, I would be willing to risk a new trial on the premise that these factors, among others, contributed to the result in the first trial.

**11.** The importance of this opportunity can not be overestimated. "Speech is power: speech is to persuade, to convert, to compel. It is to bring another out of his bad sense into your good sense." *See* Ralph Waldo Emerson, *Letters and Social Aims* (1876).

distinction between "trial errors" and "structural defects."

In *State v. Lowe,* 811 S.W.2d 526, 527 (Tenn.1991), we addressed the issue of whether a denial of a defendant's statutory right to a continuance after the State files an untimely notice of its intent to seek an enhanced sentence "is absolute, or rather is subject to harmless error analysis." Although we had never previously stated that denial of that right prejudices the judicial system as a whole, we nevertheless held that harmless error analysis did not apply because "the right is absolute." These findings were made simply upon the plain language of a statute guaranteeing the right, the language of the Rules of Criminal Procedure, and the Advisory Committee comments to the Rules of Criminal Procedure. Similarly, in *State v. Muse,* 967 S.W.2d 764, 768 (Tenn.1998), we adopted a "defies harmless error analysis" with respect to a defendant's right to be present at jury selection. In *Muse,* our conclusion was derived simply from our belief that the state constitution and statutes elevated this right to fundamental status in Tennessee, incapable of harmless error analysis. *See* 967 S.W.2d at 766, 768.

As the majority plainly concedes, the right of a defendant to testify at his or her own trial is guaranteed not only by the state constitution, but also by statutes, prior case law, and current practice. Even if a denial of the right to testify is generally held to a harmless error analysis under the federal standard, prior precedent from this Court all but compels a contrary finding according to state law. As the majority recognizes with its citation to *Rock v. Arkansas,* the denial of the right to testify strikes at the very heart of fairness in the system of criminal justice. It is incongruous, therefore, to deny that such an error prejudices the system as a whole. I would hold that a unilateral deprivation by defense counsel of the defendant's right to testify cannot constitute harmless error under either the state or the federal con-

stitutions. Consequently, I respectfully dissent from that part of the majority opinion subjecting to harmless error analysis the right of a criminal defendant to testify.

I am authorized to state that Justice Birch joins in this concurring/dissenting opinion.

## OPINION ON PETITION TO REHEAR

PER CURIAM.

The appellant, Napoleon Momon, and Amicus Curiae, Tennessee Association of Criminal Defense Lawyers, ("TACDL"), have filed petitions to rehear the opinion of this Court issued on November 15, 1999. The appellant asserts in his petition that the Court erred in finding that the harmless error doctrine may be applied to a violation of the fundamental right to testify. TACDL challenges the voir dire procedure adopted in the opinion and argues that a defendant should also be permitted to execute a written waiver of the right to testify in place of the on-the-record voir dire waiver. In its response, the State asserts that the Court could modify its decision to allow the defendant to make an on-the-record statement acknowledging that he or she has been advised that

(1) the defendant has the right not to testify, and if the defendant does not testify, then the jury (or court) may not draw any inferences from the defendant's failure to testify;

(2) the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying;

(3) the defendant has consulted with his or her counsel in making the decision whether or not to testify; that the defendant has been advised of the advantages and disadvantages of testifying; and that the defendant has voluntarily and personally waived the right to testify.

According to the State, this on-the-record statement approach is preferable to a written waiver and also protects the attorney-client privilege. However, in the event the Court agrees with TACDL and permits a written waiver, the State asserts that the waiver should not be executed until after the presentation of the prosecution's case-in-chief.

After due consideration, we conclude that the appellant's petition to rehear challenging the Court's application of the harmless error doctrine to a violation of the right to testify should be and hereby is DENIED. The members of this Court continue to adhere to their original opinions on this issue.

 However, the petition to rehear filed by TACDL is well-taken and is GRANTED. We hereby hold that defendants may waive the right to testify either by signing a written waiver or by engaging in the voir dire procedure set out in the initial decision of this Court. *Cf.* Tenn. R.Crim. P. 23 (allowing a written waiver of trial by jury); *State v. Muse*, 967 S.W.2d 764, 768 (Tenn.1998) (stating that right to be present at voir dire of the jury may be personally waived by the defendant either in writing or on-the-record in open court.") If a written waiver is executed, the written form must show at a minimum that the defendant knew and understood items 1–3 above. In addition, we agree with the State that the written waiver should not be executed before the close of the prosecution's case-in-chief.

Costs of this petition to rehear are taxed against the State for which execution may issue if necessary.