IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 28, 2001

## STATE OF TENNESSEE v. CORY MILLIKEN

**Appeal from the Criminal Court for Davidson County**
**No. 98-A-825     Steve Dozier, Judge**

_____

**No. M2001-00344-CCA-R3-PC - Filed December 7, 2001**

_____

The Defendant, Corey L. Milliken, pled guilty to two counts of first degree premeditated murder and one count of aggravated robbery.[1] His agreed sentence was two concurrent life sentences for the murders and a consecutive twelve year term for the aggravated robbery, for an effective sentence of life plus twelve years. The Defendant timely filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel and that his guilty plea was not entered knowingly and voluntarily. After a hearing the trial court denied relief and the Defendant appealed as of right. Finding no error in the trial court's ruling on the Defendant's petition, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Cory Milliken.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Tom Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the hearing on the petition for post-conviction relief, the Defendant's trial counsel, Assistant Public Defender Ross Alderman, testified that he represented the Defendant on the charges brought against him from the evening after his arrest through the Defendant's guilty plea. Assisting

_____

[1] For a detailed discussion of the facts and circumstances of the offenses, see State v. William R. Stevens, No. M1999-02067-CCA-R3-DD, 2001 WL 579054 (Tenn. Crim. App., Nashville, May 30, 2001).

Mr. Alderman on the case were Public Defender Karl Dean and Assistant Public Defender Wendy Tucker. Mr. Alderman explained that he and Mr. Dean and Ms. Tucker each spent "a significant amount of time" working on the Defendant's case. He testified that he went over the State's case with the Defendant which included some physical evidence and two videotaped confessions by the Defendant. Mr. Alderman and his team evaluated these confessions and they were unable to develop a "significant basis" on which to move for their suppression.

Mr. Alderman explained that he discussed the case with the Defendant and the Defendant alternated between wanting to plead guilty and wanting to go to trial. Mr. Alderman stated that the Defendant sometimes maintained his innocence, and other times did not. The Defendant also told Mr. Alderman that he had confessed to the crimes because he was afraid of his co-defendant, claiming that his co-defendant had actually committed the murders, and that the Defendant was afraid he would kill the Defendant's family if the Defendant did not confess. On another occasion, Mr. Alderman testified, the Defendant "was insisting on . . . pleading guilty immediately and taking a larger sentence than what the State was, at that time, suggesting they might offer." The Defendant's anxiousness to plead in this event was allegedly based, in part, on his desire to get out of the county jail.

Mr. Alderman knew that his client was learning disabled and "had a hard time reading." Mr. Alderman also testified that he was "certain there [were] psychological issues that needed to be explored," and made arrangements to have the Defendant evaluated by a psychologist. The psychologist suggested that the Defendant might have suffered some neuro-psychological damage or some organic damage. Accordingly, Mr. Alderman arranged to have two different brain scans performed on the Defendant. In spite of these efforts, Mr. Alderman testified that he was "not able to find any experts, specifically, who would give us any information that would support an insanity defense." Mr. Alderman further testified that he "couldn't really articulate a diminished capacity [defense], given the [murder for hire] nature of the offense." Accordingly, Mr. Alderman determined that neither of those avenues of defending his client was available. Mr. Alderman testified that, given the proof in the case, "the defenses were really going to have to be either, he wasn't there and didn't do it or he shouldn't be held responsible, even though he did do it." However, the alibi evidence was weak and other evidence corroborated the Defendant's confessions.

Mr. Alderman testified that the Defendant was "immature" and that he appeared at times to not be "focusing on the seriousness of some of the issues." At these times, Mr. Alderman explained, he would have to take time explaining the seriousness of the matter to his client. He was able to have coherent conversations with the Defendant, however. When the Defendant appeared not to understand something, Mr. Alderman would try to explain it to him. Mr. Alderman's assessment of the case was that the Defendant "would be convicted of first degree murder," and he informed his client of that conclusion. Mr. Alderman was also concerned that the Defendant might be a candidate for the death penalty, or would receive consecutive sentences if he went to trial and was convicted.

Mr. Alderman testified that he went over the petition to enter a plea of guilty with the Defendant, and that the Defendant signed the petition in his presence. Mr. Alderman also testified that he felt that the Defendant understood what he was doing when he entered his guilty plea.

The Defendant testified and stated that Mr. Alderman never discussed the State's evidence with him and that he did not understand what the State's evidence against him was. He stated that his confessions to the police were false, made in fear of his co-defendant. He explained that he knew that his co-defendant killed two people and that he was afraid that if he didn't "draw the heat away from" his co-defendant, that his co-defendant would kill his family. He testified that he told Mr. Alderman that he didn't kill the victims and that he had confessed falsely. He also admitted telling Mr. Alderman that his statements to the police were true, in order, he claimed, "to get out of that county jail."

The Defendant testified that Mr. Alderman never discussed a diminished capacity defense with him. He admitted telling Mr. Alderman both that he wanted to go to trial, and that he wanted to plead guilty. On the day he pled, he testified, Mr. Alderman told him he would be receiving a sentence of one hundred two years. He stated that he did not know any differently until several months before the post-conviction hearing. He admitted that Mr. Alderman went over the plea agreement with him and tried to explain it to him, but stated that "at the time, I really wasn't there." He explained that Mr. Alderman "was talking, but I wasn't hearing." He testified that he didn't understand what Mr. Alderman told him about the plea, but that he didn't explain his confusion because he was "real nervous" around his lawyer and didn't want Mr. Alderman to think that he was stupid. He further testified that he was too confused and frightened to explain his lack of understanding to the trial court during his plea hearing.

The Defendant testified that all of his schooling had been in special education schools. Prior to the hearing on his post-conviction petition, the Defendant earned a GED degree, making "the lowest score in the whole camp."

On cross-examination the Defendant admitted that he had perjured himself during his plea hearing when he told the court that he understood his plea. He also stated, in response to a question by the trial court at the post-conviction hearing, that he had filed his petition on the advice of someone he spoke with in prison to "try to get a new trial, [so he] could beat [his] charges."

After taking the Defendant's petition under advisement, the trial court issued a comprehensive order denying relief. Specifically, the trial court found that the Defendant "failed to show by clear and convincing evidence that counsel was not functioning as guaranteed by the federal and state constitutions." The trial court accredited Mr. Alderman's testimony and found the Defendant's claim of ineffective assistance of counsel to be "without merit." The trial court further found the Defendant's testimony in support of his claim that he did not knowingly and voluntarily enter his guilty pleas "not credible," finding instead that "the majority of the petitioner's testimony indicates that he did understand the nature of his case and the alternatives from which he could choose."

The Defendant now contends that the trial court erred in denying him relief. To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. Tenn. Code Ann. § 40-30-210(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or reevaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79.

The Defendant asserts first that the trial court erred in finding that he received the effective assistance of counsel at trial. Both the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution guarantee a defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to counsel includes the right to effective counsel. See Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936; Strickland v. Washington, 466 U.S. 668, 686 (1984).

To determine whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936; Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). To succeed on a claim that his or her counsel was ineffective at trial, a defendant bears the burden of showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the defendant resulting in a failure to produce a reliable result. Strickland, 466 U.S. at 687; Burns, 6 S.W.3d at 461; Hicks, 983 S.W.2d at 245. To satisfy the second prong, the defendant must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the defendant's guilt. See Strickland, 466 U.S. at 694-95. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994); Owens v. State, 13 S.W.3d 742, 750 (Tenn. Crim. App. 1999).

This two part standard of measuring ineffective assistance of counsel also applies to claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985). The prejudice requirement is modified so that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks, 983 S.W.2d at 246.

When reviewing trial counsel's actions, this Court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); Owens, 13 S.W.3d at 749. Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. See Strickland, 466 U.S. at 690; Hicks, 983 S.W.2d at 246.

The trial court found that the Defendant had been

> represented by three experienced and competent attorneys who spent a significant amount of time on his case. The [Defendant] was evaluated by medical professionals. Counsel explored and examined all possible defenses and suppression issues. After a careful review of the evidence, counsel in his professional judgment determined that the petitioner had little chance of an acquittal if his case went to trial. . . . The record shows that the State had an overwhelming case against the [Defendant], including confessions to law enforcement officers. Therefore, the Court finds the claim of ineffective assistance of counsel to be without merit.

Upon our review of the transcripts of the guilty plea and post-conviction hearings, we agree that the proof indicates that the Defendant received excellent representation prior to and in conjunction with his plea, and this issue is therefore without merit.

The Defendant also contends that the trial court erred in finding that his guilty plea was entered knowingly and voluntarily. Again, the proof supports the trial court's determination that the Defendant pled guilty knowingly and voluntarily, and this issue is therefore also without merit.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE