IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2002

## ANTHONY HODGES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 96-A-317      J. Randall Wyatt, Jr., Judge**

_____

### No. M2001-03068-CCA-R3-PC - Filed December 4, 2002

_____

The Defendant, Anthony Hodges, was convicted by a jury of first degree felony murder and aggravated child abuse. He was sentenced to concurrent sentences of life without parole and twenty-five years, respectively, to be served in the Department of Correction. The Defendant's convictions and sentences were affirmed on direct appeal. See State v. Hodges, 7 S.W.3d 609 (Tenn. Crim. App. 1998). The Defendant subsequently petitioned for post-conviction relief, which the trial court denied. The Defendant now appeals, alleging that he received ineffective assistance of counsel at trial and that his due process rights were violated by the trial court's failure to instruct the jury on second degree murder; by the State's employment of inconsistent theories of guilt at his and his co-defendant's separate trials; and by the denial of his right to testify. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Anthony Hodges.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Bernard F. McEvoy, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant's convictions arose out of the death of twenty-eight-month-old Miyoshi Richardson, who was killed by intentional blows to her head and torso. The Defendant was married to the victim's mother, Kena Hodges. The proof established that either the Defendant or Kena Hodges inflicted the fatal blows. On the day of the victim's death, Kena Hodges left her in the Defendant's care for the day. During the day, the Defendant called Kena with questions about the

child's condition. However, no medical attention was obtained until after the child had died. At the Defendant's trial, the State proceeded on the alternate theories that the Defendant was guilty because he inflicted the fatal blows himself, or that Kena Hodges inflicted the fatal blows and the Defendant was guilty because he was criminally responsible for her actions.

The Defendant contends on appeal that his trial attorneys, Mr. Richard Tennent and Mr. Karl Dean, were ineffective in their representation of him prior to and at trial in the following respects:
1. Mr. Tennent conceded the Defendant's guilt during closing argument;
2. Their investigation and presentation of mitigation evidence was inadequate;
3. They failed to investigate the qualifications of one of the State's expert witnesses;
4. They failed to object to a leading question by the prosecutor;
5. They failed to challenge the constitutionality of Tennessee's child abuse statutes;
6. They failed to request a jury instruction on aggravated assault;
7. They failed to object to improper closing arguments by the State; and
8. They failed to request a sequestered jury.

In support of these allegations, the Defendant called attorneys Tennent and Dean at the post-conviction hearing and introduced portions of Mr. Tennent's closing argument.

Mr. Tennent testified that
> [t]he defense theory was that Mr. Hodges didn't inflict any injuries on the child, that Kena Hodges brutally beat the child, that he did not know how badly[sic] these injuries were. And that he did, in fact, take action to deal with it. His actions were insufficient, of course, but he did call Kena, relating to the mother of the child that the child was sick . . . seemed to be in some form of distress. And I believe we put on witnesses from the day care center where Kena worked, where Kena was, basically, telling him it's no big deal, don't worry about it, something to that effect. So our position was that he just had no idea of how bad this was, that he had not encouraged, in any way, shape, or form, the abuse that Kena had applied to the child, that it was entirely her action. And he had no reason to know until it was too late how bad this was.

Mr. Tennent acknowledged that, during closing argument, he told the jury that his client had lied to the police about what Kena Hodges had done the night before Miyoshi died, that the Defendant was a "coward" for not stopping Kena from beating the child, and that he was "spineless" for not saving the child's life. Mr. Tennent conceded that his closing argument was, in part, "tactically, not a good decision, in retrospect." He explained his argument as being intended to maintain credibility with the jury, not to concede the Defendant's guilt. In response to the Defendant's questions about Mr. Tennent's closing argument, Mr. Dean explained that "this was a difficult case" and that Mr. Tennent "did the best he could under the situation."

With respect to mitigation evidence, Mr. Tennent explained that Dr. Jill Blair prepared a psychological assessment on behalf of the defense, but that it "was very negative." Accordingly, the Defendant's trial lawyers did not introduce any psychological evidence. They did introduce proof through some of the Defendant's neighbors that the Defendant "seemed to love his daughter." Someone from the Sheriff's Department testified that the Defendant was a good inmate. Family members were not available because they had purchased non-refundable tickets; when the trial was continued, they were unable to purchase replacement tickets. Attorneys Tennent and Dean did not put on proof about the Defendant's past experience as a preacher because, according to Mr. Tennent, the Defendant "was sort of a – in simple terms 'a fallen preacher.'" Mr. Tennent testified that they "thought that [they] could open a real can of worms getting into some negative events in his past history," including some prior convictions.

The State called Susan Patricia Starling as an expert at the Defendant's trial to testify about Shaken Baby Syndrome. Mr. Tennent explained that he did not challenge her qualifications because it was his "normal tactical decision" to not challenge an expert witness who was likely to be accepted as an expert by the court. It was his opinion that Ms. Starling was such a witness, and he did not want "to act like a litigious fool in front of the Jury."

With respect to a jury instruction on aggravated assault, Mr. Tennent and Mr. Dean both testified that they did not recall why they did not request that instruction. With respect to requesting a sequestered jury, Mr. Tennent testified that it was his opinion that they could get a jury untainted by the media, and that "sequestration would be more prejudicial than helpful."

The Defendant testified and stated that, contrary to the Defendant's request, Mr. Tennent did not make contact with several of the Defendant's "colleagues." These colleagues did not testify at the post-conviction hearing, however. The record therefore contains no proof as to how Mr. Tennent's failure to contact these people prejudiced the Defendant.

The Defendant testified that there was nothing in his past that he wanted to be kept from a jury. He explained that he told Mr. Tennent "repeatedly" that he wanted to testify on his own behalf at trial and stated that he would have testified at the trial that he had never been involved in any physical abuse of Miyoshi, that he would have called an ambulance if he had realized how seriously the child was hurt, and that he was "not responsible for what her mother did to her that day." On cross-examination the Defendant admitted to two prior felony convictions for burglary and arson; he also admitted that he had been charged in the past with criminal trespass regarding a residence and domestic assault.

The Defendant introduced no proof at the hearing as to why trial counsel did not object to a specific question asked by the State during its direct examination of the medical examiner who performed the autopsy on the victim. This allegation of ineffective assistance of counsel is, accordingly, waived. See Tenn. Code Ann. § 40-30-210(f) ("The petitioner shall have the burden of proving the allegations of fact by clear and convincing evidence.") Similarly, the Defendant introduced no proof as to why trial counsel did not challenge the constitutionality of Tennessee's

child abuse statutes. In addition to being therefore waived, this claim of ineffective assistance of counsel is without merit. A challenge to these statutes was raised in conjunction with the case against the Defendant's co-defendant, Kena Hodges. On direct appeal, this Court found the statutes to be constitutional. See State v. Kena Hodges, No. 01C01-9804-CR-00170, 1999 Tenn. Crim. App. LEXIS 866, at *31-34 (Nashville, Aug. 11, 1999). Finally, the Defendant introduced no proof regarding his trial lawyers' failure to object to certain portions of the State's closing arguments. This issue is, accordingly, waived.

In analyzing the Defendant's claims of ineffective assistance of counsel, the trial court found as follows:

> The Court is of the opinion that the trial attorney who handled this matter, Mr. Richard Tennent, performed his duties in a diligent and competent manner. Additionally, the Court is of the opinion that co-counsel Karl Dean is a very experienced trial attorney who has tried many first degree murder cases prior to this case. The Court is of the opinion that the trial attorneys in this matter, Richard Tennent and Karl Dean, performed their duties in an appropriate and competent manner.

Accordingly, the trial court found the Defendant's claim of ineffective assistance of counsel to be "without merit." The trial court also denied relief on the Defendant's claims of due process violations.

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-210(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or reevaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79.

Both the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution guarantee a defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to counsel includes the right to effective counsel. See Strickland v. Washington, 466 U.S. 668, 686 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

To determine whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936; Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim.

App. 1998).  To succeed on a claim that his or her counsel was ineffective at trial, a defendant bears the burden of showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the defendant resulting in a failure to produce a reliable result.  See Strickland, 466 U.S. at 687; Burns, 6 S.W.3d at 461; Hicks, 983 S.W.2d at 245.  To satisfy the second prong, the defendant must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the defendant's guilt.  See Strickland, 466 U.S. at 694-95.  This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994); Owens v. State, 13 S.W.3d 742, 750 (Tenn. Crim. App. 1999).

When reviewing trial counsel's actions, this Court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics.  See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); Owens, 13 S.W.3d at 749.  Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances.  See Strickland, 466 U.S. at 690; Hicks, 983 S.W.2d at 246.

We agree with the trial court that the Defendant received the effective assistance of counsel at trial.  Those actions of trial counsel of which the Defendant complains and about which he adduced proof at the post-conviction hearing were based on tactical decisions made in the midst of preparing for and conducting a difficult first degree murder trial.[1]  While Mr. Tennent may have conceded in retrospect that he might have done some things differently, this Court does not review tactical decisions through the lens of hindsight.  The Defendant has failed to demonstrate by clear and convincing evidence that either or both of his trial lawyers' performance fell below the standard of competence demanded by the law. Accordingly, the Defendant is entitled to no relief on this basis.

The Defendant also contends that his constitutional rights to due process[2] were violated when the trial court failed to issue a jury instruction on the lesser-included offense of second degree murder.  The Defendant is correct in that second degree murder is currently recognized as a lesser-included offense of first degree felony murder.  See State v. Ely, 48 S.W.3d 710, 721-22 (Tenn. 2001).  However, at the time the Defendant was tried in January 1997, Tennessee jurisprudence did not consider second degree murder to be a lesser-included offense of first degree felony murder. See, e.g. State v. Gilliam, 901 S.W.2d 385, 390-91 (Tenn. Crim. App. 1995).  Tennessee's analysis of

---

[1]Both lawyers testified that they did not remember their analyses regarding a jury instruction on aggravated assault.  We cannot, therefore, characterize the omission of this instruction as a "tactical decision."  Nevertheless, even if the Defendant's trial lawyers erred in failing to request this instruction, the Defendant has not demonstrated a reasonable probability that, but for the alleged error, the jury would have had reasonable doubt regarding the Defendant's guilt of first degree murder.  That is, the omission of a jury instruction on aggravated assault in this case does not undermine our confidence in the outcome of the Defendant's trial.  Accordingly, this allegation of ineffective assistance of counsel is without merit.

[2]See U.S. Const. amends. V & XIV; Tenn. Const. art. I, §§ 8 & 9.

lesser-included offenses was revised on November 8, 1999, with the filing of our supreme court's opinion in State v. Burns, 6 S.W.3d 453 (Tenn. 1999). Indeed, Ely relied upon Burns in determining that, henceforward, second degree murder is a lesser-included offense of first degree felony murder. See State v. Ely, 48 S.W.3d at 721-22. While Burns has been given retroactive effect to cases in the direct appellate "pipeline" at the time Burns was decided, see, e.g., State v. Stokes, 24 S.W.3d 303, 305 (Tenn. 2000), the Defendant's direct appeal had concluded by the time Burns was decided: the supreme court denied the Defendant's application for permission to appeal from this Court's decision denying his direct appeal on September 13, 1999. See State v. Hodges, 7 S.W.3d at 609. Burns has not been given retroactive application in post-conviction cases where the direct appeal was concluded prior to Burns. See James Richard Bishop v. State, No. E2000-01725-CCA-R3-PC, 2001 Tenn. Crim. App. LEXIS 513, at *23-24 (Knoxville, April 25, 2001). Accordingly, we hold that Burns does not offer a constitutional claim for relief cognizant within a post-conviction proceeding where the defendant's direct appeal was concluded prior to the filing of Burns.

With respect to the Defendant's argument that he was entitled to a jury instruction on second degree murder under the law as it then existed and based on the evidence adduced at trial, that argument was available for pursuit on direct appeal, and is therefore waived in the context of this proceeding. See Tenn. Code Ann. § 40-30-206(g).

The Defendant next argues that his due process rights were violated because the State argued inconsistent theories of criminal liability at the separate trials of him and his co-defendant, Kena Hodges. The trial court found that this issue was waived as having been available on direct appeal, and as having been "previously addressed" by the trial court. The Defendant does not take issue in his brief with the trial court's reasons for denying this claim for relief; he simply repeats the argument he makes in his Second Amended Petition in favor of this claim. We are unable to determine from the record before us whether or not Kena Hodges' trial was conducted within the time frame available to the Defendant for inclusion of this alleged error in his direct appeal. It is the appellant's duty to prepare an adequate record on appeal. See Tenn. R. App. P. 24(b). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). The trial court denied relief on this basis, and we affirm that decision.

Finally, the Defendant contends that his constitutional rights were violated because his attorneys refused to allow him to testify at trial. The Defendant testified at his post-conviction hearing that he "repeatedly" told Mr. Tennent that he wanted to testify. He stated that he was "left with the impression" that he was going to testify until his lawyer told the trial judge that the defense was resting its case. The Defendant testified that he "asked [Mr. Tennent] at that point, . . . what are you doing? Where did you -- I thought you were going to let me testify. What's going on?" According to the Defendant, Mr. Tennent responded by telling him to "be cool."

Mr. Tennent testified that he and Mr. Dean explained to the Defendant the advantages and disadvantages of testifying. Mr. Tennent advised the Defendant not to testify because "his demeanor in describing the events was always remorseless" and expressed "an attitude that [he] thought would

be devastating in front of a Jury." Mr. Tennent further testified that the Defendant "did not express any strong desire to testify." Mr. Tennent stated unequivocally that it was the Defendant's decision not to testify.

The trial court did not credit the Defendant's testimony that his attorneys violated his right to testify. The evidence does not preponderate against the trial court's findings in this regard, and we therefore find no error in the trial court's denial of relief on this basis.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE