# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 7, 2011

## STATE OF TENNESSEE v. GREGORY TYRONE GREER

**Direct Appeal from the Circuit Court for Madison County**
**No. 09-758      Donald H. Allen, Judge**

---

**No. W2010-01536-CCA-R3-CD  - Filed August 9, 2011**

---

The Appellant, Gregory Tyrone Greer, was convicted by a Madison County jury of reckless aggravated assault, a Class D felony.  He was sentenced as a career offender to twelve years in the Tennessee Department of Correction.  In his sole issue on appeal, he contends that the evidence is insufficient to support his conviction.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, for the appellant, Gregory Tyrone Greer.

Robert E. Cooper, Jr. , Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The Appellant's conviction arose from an August 25, 2009 argument with the victim, Jolanda Stovall.  The victim testified that she was living with her sister, Tameka Brawner, in an apartment directly above an apartment the Appellant shared with his girlfriend, Laronda Wallace, and their children.  The victim said that earlier that day, Ms. Wallace had asked the victim's friend for a ride.  When the victim and her friend returned to the apartment complex sometime before school got out that day, the victim stopped at the Appellant's apartment to tell Ms. Wallace that they had returned so that Ms. Wallace could get her ride.  The Appellant

was standing in the doorway.

The victim said that when she asked the Appellant if Ms. Wallace was at home, the Appellant "just clicked and went off from there." She said that as she stood on the stairway leading to her apartment, the Appellant began yelling at her. He told her, "You broke bitches. She ain't got no cigarettes." The victim did not understand why the Appellant would say such a thing because she had not asked for any cigarettes. She told the Appellant that she "didn't know who he had a problem with, but he need[ed] to go take it up with who he had the problem with." The Appellant told the victim that he "was going to take it out on [her]." At that point, the Appellant and the victim began arguing "back and forth." The victim testified that the Appellant was "talking crazy" and accused the victim of "begging" all the time. The victim responded that "his baby mama d[id] all the begging."

The victim went upstairs into her apartment. She could hear Ms. Wallace outside trying to calm the Appellant. When the victim saw her sister and her sister's boyfriend, Jasmine Greer, walking from the parking lot to the steps, the victim went to the door. As she opened the door, the Appellant shot her in the left arm. She testified that she heard two shots before being hit. She grabbed a sweater to control the bleeding from her arm, and looked outside. She saw the Appellant and Ms. Wallace running through a field.

Two friends from the apartment complex gave the victim a ride to the hospital where she was treated and released. Sometime before Christmas, the victim underwent surgery to remove the bullet lodged in her arm. She reported that she had no residual effects from the wound.

On cross-examination, the victim testified that she did not telephone the police but that a neighbor, Sumayyah Casey, telephoned the police to report the shooting. The victim denied hearing either her sister or Jasmine Greer arguing with the Appellant. She said she opened the door when she heard people yelling that the Appellant had a gun because she feared that her nieces and nephews, who were with her sister, would be harmed. Although her statement to police indicated that she had only heard one shot, the victim affirmed that she actually heard two shots. She also explained that her statement to police erroneously stated that she was entering her apartment when shot. She affirmed that she was opening the door from inside the apartment. The victim denied threatening to "blow [the Appellant's] brains out." She also said that neither she nor Jasmine Greer had a gun during the argument.

Tameka Brawner, the victim's sister, testified that she arrived home with her children and boyfriend at approximately 4:00 p.m. on August 25, 2009. As she pulled into the parking lot, she saw her sister, Ms. Stovall, and the Appellant arguing. Not wanting any trouble that might jeopardize her keeping the apartment, Ms. Brawner told the victim to stop arguing and

-2-

go inside the apartment. Ms. Brawner said that she got her children and the victim safely inside the apartment as the Appellant began to argue with her. She recalled Ms. Wallace trying to pull the Appellant away from the argument. Ms. Brawner saw that the Appellant had his hand in his pants pocket, and she yelled for her children to go to the neighbor's apartment. Suddenly, Ms. Brawner heard three gunshots. She saw the Appellant with a handgun. Ms. Brawner said that recently she had been injured in a shooting and "just froze." Ms. Casey, her neighbor, pulled her into Ms. Casey's apartment.

After the shooting ended, Ms. Brawner entered her apartment to find blood everywhere and bullet holes in her kitchen. She feared one of her children had been shot but soon learned that the victim had been shot in the upper left arm. Ms. Brawner and the victim ran to the parking lot, flagged down a car, and asked for a ride to the hospital. On their way to the hospital, Ms. Brawner saw the police, jumped out of the car she was traveling in, and got in the police car to direct them to the crime scene.

Samayyah Casey, Ms. Brawner's neighbor, testified that she and the victim arrived at the apartment complex separately but at approximately the same time on the afternoon of August 25, 2009. As they walked up the stairway to their respective apartments, the Appellant and the victim began "cussing each other." Ms. Casey, said that she was "just kind of being nosey and looking" so she stayed on the stairway landing outside her apartment to watch the argument. She remembered hearing the Appellant refer to the victim and others as "begging bitches."

Ms. Casey recalled that Ms. Wallace was outside trying to calm the Appellant when Ms. Brawner arrived home with her children. Ms. Brawner ushered the children and the victim inside the apartment and then came outside to see what the argument was about. The Appellant "kind of pushed" Ms. Brawner and continued to threaten to "kick [the victim's] ass." The Appellant initially refused the leave the stairway despite Ms. Wallace's attempts to calm him. Eventually, he returned to his chair near the doorway of his apartment and mumbled, "F - - - all these bitches. F- - - all you whores." Ms. Brawner's boyfriend walked onto the stairway landing and told her to come inside because he thought "something [was] wrong" with the Appellant. Soon thereafter, the shooting began.

Ms. Casey said that she pulled Ms. Brawner into her apartment for safety. Ms. Casey saw the Appellant with a handgun, and she heard at least three shots. Ms. Casey said that the victim would not have gotten shot had she not opened the door. As soon as the shooting ended, the Appellant "took off running." When the police arrived, Ms. Casey gave a statement. She learned later that day that the Appellant had been arrested. Ms. Casey did not hear the victim threaten the Appellant. She also denied that the Appellant had argued with either Ms. Brawner or Ms. Brawner's boyfriend.

Jackson Police Department Patrol Officer Ashley Robertson responded to the call of a shooting at the apartment complex at 4:20 p.m. on August 25, 2009. The police department dispatcher advised that someone had been shot and that the Appellant was the perpetrator. As Officer Robertson neared the apartment complex, Ms. Brawner flagged him down and rode with him to the apartment complex. Upon their arrival, a crowd of approximately 50 people had formed at the scene. Several people reported that the Appellant was inside his apartment; but, after a thorough search, the Appellant could not be located. Officer Robertson observed blood inside Ms. Brawner's apartment and a bullet hole in her door. He was unable, however, to locate a weapon, shell casings, or bullets at the scene. Officer Robertson spoke to the victim at the hospital and observed the gunshot wound to her left arm.

Jackson Police Department Patrol Officer Jeffrey Wood interviewed the victim at the hospital while she received treatment for the gunshot wound to her arm. From the interview, Officer Wood understood that the victim was shot in the doorway as she entered the apartment.

Following the State's proof, the Appellant elected not to testify. See Momon v. State, 18 S.W.3d 152 (Tenn. 1999). Based upon the foregoing evidence, the jury acquitted the Appellant of attempted first degree murder as charged in count one of the indictment and convicted the Appellant of reckless aggravated assault, a lesser offense of aggravated assault as charged in count two of the indictment. At sentencing, the parties agreed that the Appellant qualified for sentencing as a career offender. Accordingly, the trial court sentenced the Appellant to serve 12 years in the Tennessee Department of Correction.

## II. Analysis

Before this court, the Appellant argues that the evidence is insufficient to support his conviction because "[t]he State's three main witnesses could not agree on important facts" and this "inability to agree on several crucial facts should give this Court pause." The State contends that the jury resolved all conflicts in the evidence and that the evidence is sufficient to support the Appellant's conviction of reckless aggravated assault.

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the

evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

In order to prove that the Appellant committed the reckless aggravated assault, the State was required to prove that the Appellant recklessly caused bodily injury to the victim while using or displaying a deadly weapon. *See* Tenn. Code Ann. §§ 39-13-101(a)(1) and 39-13-102(a)(2)(B) (2006). Tennessee Code Annotated section 39-11-302(c) provides:

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-302(c).

In the light most favorable to the State, the evidence showed that the Appellant was involved in an argument with the victim, that he fired several shots and that one of the shots struck the victim. Any conflicts in witness testimony concerning the number of shots fired or whether the victim was entering or exiting her apartment when wounded were properly resolved by the jury. Accordingly, we conclude that the evidence is sufficient to support the Appellant's conviction of reckless aggravated assault. The judgment of the trial court is affirmed.

_____
NORMA MCGEE OGLE, JUDGE

-5-