# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 8, 2011 Session

## STATE OF TENNESSEE v. GERALD JAMES WINGARD

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3078      Monte Watkins, Judge**

---

**No. M2010-00434-CCA-R3-CD - Filed November 15, 2011**

---

The defendant, Gerald James Wingard, was convicted of aggravated robbery, a Class B felony, and sentenced to ten years as a Range I offender. On appeal, the defendant claims that: (1) the evidence was insufficient to support his conviction; (2) the trial court erred by denying his request for a particular jury instruction; and (3) the trial court erred by refusing to apply certain mitigating factors offered by the defendant at sentencing. After careful review of the record, we discern no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

James Davidow and Manuel B. Russ, Nashville, Tennessee, for the appellant, Gerald James Wingard.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Hugh T. Ammerman, III, and Antoinette Welch, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The defendant in this case was indicted by the Davidson County Grand Jury on November 6, 2009, on one count of aggravated robbery and one count of simple assault. He was convicted of both charges after a trial by jury on January 11-12, 2010. At his trial, the victim in this case, Ms. Gayla Ross, took the stand and testified to the following:

For a few months prior to May 16, 2008, Ms. Ross was living with the defendant in

the Mercury Court Apartments across the street from the Drake Motel on Murfreesboro Road in Davidson County. She was working as a prostitute at the time. During the early morning hours of May 16, the victim made the decision to leave the defendant because she had become afraid for her safety. She packed up her things while the defendant was asleep and moved them from their unit in the Mercury Court Apartments to a room in the Drake Motel, which was being occupied by some acquaintances. These acquaintances had agreed to permit her to temporarily use the room while she escaped from the defendant.

Later in the morning, these acquaintances had to leave the motel room to go to work, requiring the victim to temporarily vacate the room until they returned from work later that day. In the interim, the acquaintances permitted the victim to leave her belongings in their motel room. Consequently, the victim found herself in the position of needing to occupy herself outside of the motel throughout the day until the acquaintances returned from work, when she planned to retrieve her belongings and travel to see her daughter.

The victim occupied herself during the intervening time by working the streets and smoking crack cocaine. Around lunchtime, she had an encounter with the local police and was arrested for prostitution and possession of drug paraphernalia. The officers involved elected not to take her into immediate custody, because the victim claimed that her daughter was graduating from school that day, and she pleaded with them to be able to attend the graduation ceremony before turning herself in on the following Monday. The officers agreed but placed two warrants for her arrest into the system in order to ensure her compliance.

After receiving a temporary reprieve from the officers, the victim remained in the same general location, and about two hours later, at approximately three o'clock p.m., she saw the defendant get off of a bus in front of the Drake Motel. The victim had been aware that the defendant would likely be looking for her. When she saw him, she unsuccessfully attempted to hide. The defendant saw her, came toward her, and instructed her to come with him. The victim refused. The defendant then closed the distance between them, grabbed her by the hair, and tried to pull her toward him. The victim pulled herself free and escaped inside a nearby store, where the defendant dared not follow. After lurking outside for a period of time, the defendant got into a small red car that was being driven by his son-in-law and appeared to drive off.

After waiting in the store for approximately a half-hour, the victim exited and attempted to cross the street to return to the Drake Motel. While in the process of crossing the street, the victim saw the red car come back toward her by the median. The defendant leaned out of the passenger side window and yelled at her to answer her cell phone. The victim responded to the defendant that she did not have her cell phone. The defendant then commanded the victim to get into the car. When the victim refused, the defendant exited the

vehicle and came toward her. The victim could see that the defendant was carrying a gun in his hand behind him so the victim fled back onto the sidewalk until she was trapped by a fence. She then ducked and covered her head in the belief that the defendant was about to shoot her.

The defendant approached the victim, grabbed her hair to lift her head up, and pressed his gun to the side of her head with one hand. He then dragged her some distance by her hair. Suddenly, a friend of the victim who was across the street called out the victim's street name, Gigi, and briefly distracted the defendant. The victim jerked her head down just as the defendant's gun went off, and the victim saw a bullet hit the ground right in front of her. The victim testified that she permanently lost her hearing in her right ear as a result of this incident.

After discharging his weapon, the victim testified that the defendant tore her purse off of her arm and fled. The victim was in shock from the encounter for a period of time, and her friend arrived from across the street and rendered aid to her until the police arrived. The victim testified that the defendant took her purse against her will and that, at the time it was taken, her purse contained $20, her identification, her Social Security card, and some irreplaceable personal items. After recounting her story to the police, making a complaint, and receiving medical attention, the victim was taken into custody on her outstanding warrants.

The State's second witness was Mr. Jerry King, a fleet manager at RSC Rental Equipment. Mr. King testified that around five o'clock on May 16, 2008, he was driving home from work with his car windows rolled up while listening to Christian music on his radio. As he was traveling down Murfreesboro Road, he reached an intersection near the Drake Motel. As he approached the corner, he saw that there was a woman stepping up onto the curb with a man approaching her from behind. Mr. King testified that as he was driving by, he watched this man grab this woman from behind and knock her down on the street. He then saw the man grab the woman's purse and pull her some distance along the ground while the woman looked up in horror. As Mr. King passed them in his vehicle, the man gained full possession of the woman's purse, turned around, and fled down the street in the opposite direction. Mr. King testified that he called 9-1-1 and pulled over into a nearby parking lot on the side of the road while he waited for the police to arrive.

Mr. King testified that he got a good look at the perpetrator on the day of the incident. While on the stand, Mr. King identified the defendant as the man who had assaulted the woman and taken her purse, and he identified the victim as Ms. Ross. Mr. King further testified that he had never met either the victim or the defendant prior to the date in question and that he was unable to hear any conversation that may have occurred between the two of

them on that day because his windows were rolled up and he was listening to the radio.

The State also presented the testimony of Officer Stephen Knight of the Nashville Police Department. Officer Knight testified that he was patrolling on May 16, 2008, when he received a call around 6:15 p.m. to respond to an incident at the Drake Motel. When he arrived at the scene, he located the victim, who was crying as she sat on the ground. His investigation led him to believe that the victim's ex-boyfriend had assaulted her, pulled a pistol on her, shot at her, and stolen her purse before fleeing the scene. He testified that he did not recover any shell casings from the scene but that this was not particularly unusual given that the incident had occurred on a busy street and that, if the weapon involved was a revolver, it would not have ejected any shell casings. Officer Knight also testified that he provided assistance to the victim while on the scene and that he met and interviewed Mr. Jerry King. Afterward, he went to the defendant's residence in an attempt to locate him but the defendant was not there. Sometime later, the officer testified that he assisted the victim in taking out an order of protection and in obtaining a warrant against the defendant. After presenting this testimony, the State rested.

The defense moved for a judgment of acquittal, which was denied. During discourse concerning this motion, the defendant brought up the issue of a previously filed motion for a jury instruction concerning the affirmative defense of recovery of property, claiming that the evidence could support a conclusion that the defendant's actions were justified as a lawful attempt to recover a cell phone belonging to him that he believed was in the victim's possession. The court denied both motions. Thereafter, the defendant was advised of and waived his right to testify in his own defense pursuant to the procedures described in *Momon v. State*, 18 S.W.3d 152, 162-64 (Tenn. 1999).

In his defense, the defendant called a single witness, Officer Larry Carter of the Nashville Metro Police Department, who had served the defendant's arrest warrant. Officer Carter testified that at eight o'clock a.m. on May 17th, 2008, he arrived at the defendant's residence and knocked on the door. Officer Carter testified that the defendant answered the door, did not try to run, and appeared a little surprised that there was a warrant for his arrest. Officer Carter further testified that although he did not search the defendant's residence prior to taking him into custody, he did not see a woman's purse anywhere in the residence while he was serving the warrant. Following this testimony, the defense rested.

The trial courted instructed the jury with respect to the burden of proof, the elements of aggravated robbery and lesser included offenses, and other relevant matters, but did not instruct the jury concerning the affirmative defense of recovery of property. After being duly retired, the jury deliberated for just over an hour before finding the defendant guilty as charged on both counts. A sentencing hearing was held on February 17, 2010. At that

hearing, the defense argued that the defendant should be given a lenient sentence in light of his age, the fact that the victim was his girlfriend, and because of residual doubt concerning whether or not he had, in fact, committed any actual robbery. After hearing argument, the court found several enhancement factors to be applicable: the defendant had a previous criminal history (including first degree murder); he had previously shown an unwillingness to comply with the conditions of a sentence involving a release into the community; he had no hesitation in committing an offense where the risk to human life was high; his felony resulted in the threat of death or serious bodily injury; and he committed this felony while on parole. The court also found a single mitigating factor to be applicable – the fact that the victim was only "slightly," rather than "seriously," injured. Considering all of these factors together, the court sentenced the defendant to ten years for the aggravated robbery and six months for the simple assault. Afterward, the trial court merged the assault conviction into the aggravated robbery conviction, leaving the defendant with a total effective sentence of ten years.

During the same hearing, the court heard arguments concerning the defendant's motion for a new trial, which had been filed on January 20, 2010. In this motion, the defendant argued that the trial court had erred, *inter alia*, by failing to instruct the jury with respect to the affirmative defense of recovery of property and by failing to grant the defense's motion for judgment of acquittal with respect to both counts on the grounds that there was insufficient evidence to convict the defendant. The trial court denied the defendant's motion. The defendant filed a timely notice of appeal that same day, and this appeal followed.

**ANALYSIS**

On appeal, the defendant argues that: (1) the evidence was insufficient to support his conviction; (2) the trial judge erred by refusing to instruct the jury regarding the affirmative defense of claim of right; and (3) the trial judge erred by refusing to apply mitigating factors urged by the defense. For the reasons that follow, we find each claim to be without merit.

I.

After thorough review, we find that the evidence presented at trial was sufficient to support the defendant's conviction for aggravated robbery. As a matter of law, the jury's verdict of guilt with respect to the defendant's aggravated robbery charge effectively served to strip the defendant of the presumption of innocence and replace it with a presumption of guilt. *See, e.g., State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2009). The defendant had the burden of overcoming this presumption on appeal – a burden he failed to carry.

"[T]he relevant question is whether, after reviewing the evidence in the light most

favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*; *see also* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this case, the essential elements at issue were those of the crime of aggravated robbery. Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (2010). A robbery is aggravated if it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon" or if "the victim suffers serious bodily injury." T.C.A. § 39-13-402.

In this case, each element necessary to establish the offense is supported by the direct testimony of the victim. The victim testified that on the day in question, the defendant took her purse against her will by violently stripping it away from her body. The victim also testified that she saw that the defendant was carrying a firearm, that she was afraid of the defendant, and that he placed the gun against her head prior to taking the purse. The victim's testimony, standing alone, was enough to empower a reasonable jury to conclude, if it wished to do so, that the defendant had committed an aggravated robbery of the victim. That this particular victim's direct testimony was corroborated in a number of important respects by the testimony of other witnesses only serves to reinforce this conclusion.

The defendant urges this court that although the evidence may suffice to show that a robbery occurred, this robbery was not "accomplished" with a deadly weapon. Rather, the defendant urges that his possession of a handgun was solely for purposes of attempting to get the victim to come with him back to their room and that his act of stealing the victim's purse was only "incidental" and an "afterthought" to what he essentially urges this court was intended as an aggravated kidnaping. However, for purposes of determining whether or not a defendant's robbery was "accomplished" with a deadly weapon, it does not matter when the defendant formulated his *mens rea* with respect to committing the robbery. Whether robbery was the defendant's premeditated plan from the outset or whether the defendant only steeled his thoughts toward robbery in the split second following his realization that any kidnaping attempt would prove fruitless, record testimony supports the conclusion that this defendant intentionally dispossessed the victim of her purse after placing her in fear by displaying (and for that matter, using) a deadly weapon. The aggravated robbery statute of this state requires no more.

We acknowledge that it is entirely possible that this particular defendant could have accomplished this robbery without ever displaying or using a deadly weapon – perhaps by relying solely on his brute physical strength – had stealing the victim's purse been his initial goal. Had the defendant gone this route and left his gun at home on the day in question, this court would be confronting a different set of facts. But, establishing that a particular robbery could feasibly, probably, or even certainly have been accomplished without the display or use

of a firearm does not suffice to evade liability under the aggravated robbery statute when a firearm was, in fact, displayed or used. In this case, record evidence establishes that a firearm was used to place the victim in a state of fear, fear which did not dissipate prior to the defendant formulating an intent to steal (and, in fact, stealing) her property. Consequently, the evidence suffices to support the jury's conclusion that the defendant committed aggravated robbery when he stole a purse from the victim.

II.

On appeal, the defendant's second claim is that the trial judge erred by failing to instruct the jury concerning the affirmative defense of claim of right. Tennessee law does provide for an affirmative defense of claim of right – against charges of theft and joyriding. *See generally* T.C.A. § 39-14-107 (Claim of Right). However, claim of right is no defense to a charge of aggravated robbery. *See id.* Moreover, it does not appear from the record that the defendant requested a jury instruction regarding claim of right in the court below, and defendants are generally not permitted to raise these sorts of issue for the first time on appeal. *See* T.R.A.P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Consequently, the trial judge did not err by failing to instruct the jury on this affirmative defense.

Before the trial court and in his motion for a new trial, the defendant requested that the jury be instructed concerning the affirmative defense of recovery of property. *See* T.C.A. § 39-11-614 (Protection of Property). However, even if this court were to liberally construe the defendant's brief as continuing to press this claim, we would find no error in the trial judge's failure to instruct the jury on this issue. The defense of protection of property only justifies the threat or actual use of force to recover property when the individual claiming the defense "has been unlawfully dispossessed of . . . personal property" and when the person taking the property "accomplished the dispossession by threatening or using force against the person" claiming the defense. *Id.* Moreover, the threat or actual use of force is only permitted "to the degree it is reasonably believed [that] the force is immediately necessary to . . . recover the property, [and] if the person [who] threatens or uses the force [does so] immediately or in fresh pursuit after the dispossession. . . ." *Id.* There was no evidence put forward at the defendant's trial from which a jury could reasonably conclude that any of these factors had been established.

At most, there is some testimony in the record that the victim once possessed a prepaid cell phone that had been paid for by the defendant. There is no evidence in the record that (1) the defendant had been unlawfully dispossessed of that cell phone (which, to the contrary, appears from the record to have been a gift the defendant freely gave the victim); (2) the

victim took the cell phone from the defendant by threatening or using force against him (or for that matter that she took the cell phone from him at all); or (3) the defendant was still in "fresh pursuit" of his stolen cell phone when he attacked the victim on the street and took her purse. For these reasons, among others, the trial judge properly denied the defense's request for an instruction concerning the recovery of property.

### III.

The defendant urges that the trial court erred by rejecting mitigating factors offered by the defendant during sentencing. However, the defendant's brief does not specify which mitigating factor(s) the defendant believes that the trial court erred in failing to consider. Nor can we determine from our independent review of the record which, if any, mitigating factors were proffered by the defendant but rejected by the trial court.

The transcript of the sentencing proceedings does include an assertion made by the defendant's trial counsel to the effect that a sentencing memorandum detailing mitigating factors had been filed on the previous day. However, we cannot locate this memorandum in order to determine whether or not it urged application of any factors other than the one applied by the trial court at the sentencing hearing – the fact that the victim was not "seriously" injured. It is the defendant's duty to compile a complete record for appeal. Tenn. R. App. P. 24(b). The defendant's deficiency in this regard is particularly galling in light of the fact that the defendant requested and received several extensions of time in order to compile the record and to file his brief before this court. Where, as here, the record does not contain the documents on which the defendant's argument relies, this court is precluded from considering the argument. *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993).

Moreover, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. R. Ct. Crim. App. Rule 10. In this case, the defendant has failed to include argument and record citations of sufficient clarity to allow this court to discern the precise nature of his sentencing complaint. Consequently, we deem the argument waived and affirm the judgment of the trial court.

### CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE