IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2014

**STATE OF TENNESSEE v. MONTERIOUS BELL**

**Appeal from the Criminal Court for Shelby County**
**No. 11-02524     James C. Beasley, Jr., Judge**

---

**No. W2013-01592-CCA-R3-CD  - Filed February 5, 2015**

---

The defendant, Monterious Bell, appeals his Shelby County Criminal Court jury conviction of aggravated burglary, claiming that the evidence was insufficient to support his conviction. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and ROGER A. PAGE, JJ., joined.

Paul J. Springer, Memphis, Tennessee, for the appellant, Monterious Bell.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In April 2011, the Shelby County Criminal Court grand jury charged the defendant with one count of aggravated burglary, and the trial court conducted a jury trial in February 2013.

The State's proof at trial showed that on the morning of November 1, 2010, Odella McKinnon was at home preparing to take a bath when she heard the doorbell and then "intense beating" on her iron front door. Ms. McKinnon immediately began dressing. As she left the bathroom to open the front door, she heard someone "beating" on the back door, and she noticed a tan Toyota automobile backed into her driveway. Before she could react, she heard "cracking and breaking" on the back door. Ms. McKinnon then proceeded directly to her bedroom and retrieved her handgun. As Ms. McKinnon approached the back door, the

door "flew open" and two men rushed inside. Ms. McKinnon fired a single gunshot, and the two men turned and fled. Ms. McKinnon testified that she got "a good quick look" at the two men, and she stated that she had no trouble seeing their faces because it was "a sunny day." At trial, Ms. McKinnon described the first man, later identified as the defendant, as having light skin and standing between five feet, eight inches, and five feet, ten inches in height, and she described the second man as heavier and bald with darker skin.

Ms. McKinnon called 9-1-1, and Memphis Police Department ("MPD") Officer Martrell Boswell arrived at the scene two to three minutes after receiving the call from dispatch. Upon his arrival, Officer Boswell observed a black male, the defendant, standing by the driver's door of the tan Toyota parked in Ms. McKinnon's driveway. When the man noticed Officer Boswell's unmarked police vehicle approaching, he "crossed the street and attempted to gently knock on the door" of a neighbor's house. Officer Boswell then detained the defendant in the front yard of the neighbor's house. After other officers arrived at Ms. McKinnon's residence, Officer Boswell had the defendant stand outside Ms. McKinnon's house, and Ms. McKinnon positively identified the defendant as the first of the two men who had just broken into her home. Ms. McKinnon admitted that, at the preliminary hearing, she initially misidentified the second male who had broken into her home, but, at trial, she was adamant that she had never misidentified the defendant.

MPD Officer Patricia Turnmire photographed, among other things, a footprint on the back door of Ms. McKinnon's house and the bottoms of the shoes the defendant was wearing on November 1. Based on the ridges on the defendant's shoes, Officer Turnmire believed the defendant's shoes "to be a match" to the footprint on Ms. McKinnon's back door. Officer Boswell, a self-described "shoe connoisseur," testified that the defendant was wearing Nike "Air Force 1" athletic shoes when he was taken into custody and that the treads on those shoes matched the footprint left on the back door. Officer Boswell testified that, when the defendant's accomplice, Bryant Johnson, was arrested two hours later, he was wearing Nike "Air Max" shoes rather than "Air Force 1" shoes and that the treads on the two types of shoes were different.

Mr. Johnson testified that he had known the defendant since childhood and that, on November 1, the defendant picked him up in a tan Toyota Camry owned by the defendant's girlfriend. After the two men smoked some marijuana, the defendant drove through Ms. McKinnon's neighborhood looking for houses to burglarize. The defendant backed the Camry into Ms. McKinnon's driveway, and the defendant knocked on the front door. When he received no answer, the men proceeded to the back door and knocked. The defendant then "kicked the door in." Mr. Johnson entered the house just behind the defendant. Mr. Johnson "heard a shot," and both men fled from the house. Mr. Johnson was arrested later that day, and he admitted that he was wearing Nike "Air Max" shoes at the time

of his arrest. He recalled that the defendant was wearing Nike "Air Force 1" shoes at the time of the burglary.

With this evidence, the State rested. Following the trial court's denial of the defendant's motion for judgment of acquittal and a *Momon*[1] colloquy, the defendant elected not to testify but did choose to present proof. MPD Officer Joshua Leslie testified that he interviewed Mr. Johnson following his arrest and that Mr. Johnson had stated, among other things, that his accomplice had "kicked in the door" at Ms. McKinnon's residence. Officer Leslie also testified that Mr. Johnson's shoes did not match the shoe print on Ms. McKinnon's door.

Based on this evidence, the jury convicted the defendant as charged of aggravated burglary. Following a sentencing hearing, the trial court sentenced the defendant as a career offender and imposed a sentence of 15 years' incarceration, to be served consecutively to his sentences in a number of other cases.

Following the denial of his timely but unsuccessful motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends only that the evidence was insufficient to support his conviction. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"A person commits burglary who, without the effective consent of the property

---

[1]*See Momon v. State*, 18 S.W.3d 152, 161-62 (Tenn. 1999).

owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony . . . ." *Id.* § 39-14-402(a)(1). Aggravated burglary is "burglary of a habitation." *Id.* § 39-14-403(a).

In the instant case, the proof at trial established that the defendant and Mr. Johnson set out on November 1, 2010, with the intent to burglarize houses. The defendant backed his Toyota into Ms. McKinnon's empty driveway, and when his knocks on both the front and back doors of Ms. McKinnon's residence went unanswered, the defendant kicked in Ms. McKinnon's back door and rushed inside. Ms. McKinnon, who got a "good quick look" at the defendant's face, fired a single gunshot, and the men fled. When Officer Boswell arrived at the scene a few minutes later, he spotted the defendant loitering near the Toyota in Ms. McKinnon's driveway, and when the defendant saw the officer, he immediately proceeded to a neighbor's house and "attempted to gently knock on the door." After detaining the defendant, Officer Boswell positioned the defendant at the end of Ms. McKinnon's driveway, where Ms. McKinnon made a positive identification of the defendant as the first man who had broken into her residence earlier that day. Both Officer Turnmire and Officer Boswell testified that the shoe print on Ms. McKinnon's back door appeared to match the treads on the defendant's athletic shoes.

Viewing this evidence in the light most favorable to the prosecution, we hold the evidence adduced at trial supports the defendant's conviction of aggravated burglary. Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

-4-